## STOKES *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA.

No. 746.  Submitted March 4, 1895. — Decided March 18, 1895.

In an indictment and prosecution under Rev. Stat. § 5480, as amended by the act of March 2, 1889, c. 393, for a conspiracy to defraud by means of the post office, three matters of fact must be charged in the indictment and established by the evidence: (1) That the persons charged devised a scheme to defraud; (2) that they intended to effect this scheme by opening or intending to open correspondence with some other person through the post office establishment or by inciting such other person to open communication with them; (3) and that in carrying out such scheme such person must have either deposited a letter or packet in the post office, or taken or received one therefrom.

An objection to the admissibility of an envelope against the defendant in such a case upon the ground that it was not shown to be in his handwriting is not sustained, as the bill of exceptions did not purport to contain all the evidence.

Other objections to the admissibility of evidence considered and held to be without merit.

When a paper admitted to be in the handwriting of a defendant in a criminal prosecution is admitted in evidence for another purpose, it is competent for the jury to compare it with the handwriting of a letter which he is accused of, and indicted for, writing, for the purpose of drawing their own conclusions respecting the latter.

THIS was an indictment against the defendant Stokes and thirteen others for a conspiracy to commit the offence described in Rev. Stat. § 5480, of using the post office establishment of the United States for fraudulent purposes.

The artifice was described as one wherein each of the defendants represented himself as a dealer in various kinds of

merchandise, certifying each other to be financially respon-
sible, and ordering merchandise from various parties, having
no intention of paying for the same.

Upon the trial Stokes and eight others were found guilty,
and subsequently sentenced to fines and imprisonment.

Defendants thereupon sued out this writ of error.

*Mr. John D. Burnett* for plaintiffs in error.

*Mr. Solicitor General* for defendants in error.

Mr. Justice Brown delivered the opinion of the court.

Error is assigned to the action of the court in overruling
a demurrer to the indictment, and to the introduction of cer-
tain testimony.

1. The indictment is claimed to be defective in failing to
set out with sufficient certainty the agreement showing the
conspiracy. The indictment is for a conspiracy, Rev. Stat.
§ 5440, to commit an offence described in section 5480, as
amended by the act of March 2, 1889, c. 393, 25 Stat. 873,
which reads as follows: " If any person having devised or
intending to devise any scheme or artifice to defraud . . .
to be effected by either opening or intending to open corre-
spondence or communication with any person, whether resi-
dent within or outside the United States, by means of the
Post Office Establishment of the United States, or by inciting
such other person or any person to open communication with
the person so devising or intending, shall, in and for executing
such scheme or artifice or attempting so to do, place or
cause to be placed, any letter . . . in any post office
. . . of the United States, . . . or shall take or receive
any such therefrom, such person so misusing the Post Office
Establishment shall, upon conviction, be punishable," etc.

We agree with the defendant that three matters of fact
must be charged in the indictment and established by the
evidence. (1) That the persons charged must have devised
a scheme or artifice to defraud. (2) That they must have

intended to effect this scheme, by opening or intending to open correspondence with some other persons through the post office establishment, or by inciting such other person to open communication with them. (3) And that, in carrying out such scheme, such person must have either deposited a letter or packet in the post office, or taken or received one therefrom.

So also a conspiracy to commit such offence must state a combination between the defendants to do the three things requisite to constitute the offence. In this particular the indictment charges that the defendants " did then and there conspire, combine, confederate, and agree together to commit the act made an offence and crime by section 5480 . . . that is to say, the said defendants conspired . . . and agreed together in devising, and intending to devise, a scheme and artifice to defraud various persons, firms, and companies out of their property, goods, and chattels, and particularly to defraud, (here follows the names of certain individuals and firms,) and other persons, firms, and companies to the grand jury unknown, of their goods and chattels."

Defendants' argument assumes that these are all the allegations of the agreement constituting the conspiracy, but the indictment continues as follows : " The scheme and artifice to defraud as aforesaid was *to be carried out* by each of said defendants representing himself to be engaged as a dealer in various kinds of merchandise and goods, and to have an office, and to use in correspondence sheets of paper with his pretended business printed thereon ; and the said defendants were *mutually to represent each other* to the said persons, firms, and companies, and others unknown to the grand jurors, intended to be defrauded as aforesaid, as financially responsible and entitled to receive various kinds of merchandise and goods on credit, and the said scheme and artifice to defraud as aforesaid was *to be further effected* by ordering merchandise and goods from the persons, firms, and companies as aforesaid, and from other persons, firms, and companies to the grand jurors unknown, having no intention, then and there, to pay for such merchandise and goods so ordered as aforesaid,

but to convert the said goods and merchandise to the use of each and of each other."

We think this states with sufficient clearness the first requisite of an indictment, under section 5480, of a scheme or artifice to defraud.   The allegation is not of what was actually done, but of what the defendants conspired and intended to do.   The indictment continues: "That the post office establishment of the United States was *to be used* for the purpose of executing such scheme and artifice to defraud, as aforesaid, pursuant to said conspiracy, by opening correspondence with the said persons, firms, and companies, and other persons, firms, and companies unknown to the grand jurors, and by inciting said persons, firms, and companies and others as aforesaid to open correspondence with the said defendants by means of the post office establishment of the United States." This is a sufficient allegation of the second requisite of the offence.   "And that, for the further purpose of executing said conspiracy to defraud as aforesaid, the said J. T. Stokes *did* wrongfully and unlawfully *deposit* in a certain post office of the United States, to wit, the post office at Olivia, Conecuh County, Alabama, in the Southern District of Alabama, on or about the thirtieth day of November, eighteen hundred and ninety-one, a letter addressed to Bion F. Reynolds, Brockton, Massachusetts, which said letter was substantially in words and figures as follows, to wit:" (Here follows a copy of a letter ordering samples of shoes.) "And which said letter was then and there enclosed in a sealed envelope, deposited in the post office at Olivia as aforesaid, to be conveyed by the post office establishment of the United States to the said Bion F. Reynolds, and the said letter contained a check on Morris & Company, bankers, Montgomery, Alabama, for eight and $\frac{80}{100}$ dollars, payable to the order of the said Reynolds, and the amount of the said check was equal to the amount of merchandise and goods ordered by the said Stokes in the said letter from (to) said Reynolds; the said Stokes had no money on deposit with the said Morris & Company, bankers, as aforesaid, when he drew the enclosed said check; nor had he funds deposited with said bankers at any time, but the send-

ing of the said check was pursuant to the conspiracy aforesaid, a scheme and artifice to defraud the said Bion F. Reynolds of his goods and merchandise by not paying, and intending, then and there, not to pay for the merchandise so ordered, but to convert the same to the use of the said J. F. Stokes and other defendants named as aforesaid."

The defendants are evidently in error in claiming that the allegations of the conspiracy terminated with the first sentence of the indictment, since the following sentence sets forth details of such conspiracy and what was further agreed to be done, while the count terminates with the means actually used to carry out the scheme. We think this count sufficiently charges the offence, and as the residue of the indictment merely sets forth other and similar fraudulent correspondence by Stokes and other defendants, with other parties, by ordering goods with no intention of paying for them, and referring the parties addressed to others of the defendants for their financial responsibility, the court did not err in overruling the demurrer. Indeed, it is difficult to see, nor do the defendants suggest, what other allegations were necessary to define the offence with greater clearness or certainty; and it is impossible that they could have been misled as to the nature of the charge against them. The rules of criminal pleading do not require the indictment to set forth the evidence, or to negative every possible theory of the defence. *Evans* v. *United States,* 153 U. S. 584.

2. The second assignment alleges error in allowing the postal agent of the United States in service on a postal car in Alabama to testify as to certain envelopes found by him addressed to various parties, and allowing such envelopes, with the indorsements and writings thereon, to go to the jury as evidence. It appeared that all these envelopes were stamped "Olivia, Jan. 7, 1892, Ala.;" that each one contained a printed request to return to Stokes, to J. Pinkerton & Co., or to A. J. Kendrick, the last two of whom were defendants in the case, and charged as co-conspirators with Stokes.

These envelopes were objected to upon the ground that the handwriting of the address was not shown to be that of either

of the defendants. But the bill of exceptions does not purport to contain all the evidence that was offered to the jury, but only such as was objected to; and for all that appears, the letters that were contained in these envelopes were proven to be in the handwriting of the defendants, or to have emanated from them. These letters were the material facts to be proved, and we are bound to assume that their authorship was in some way or other traced to the defendants. If that were so, the jury would be authorized to assume that the envelopes also emanated from them. There is nothing to indicate that the letters contained in these envelopes were objected to, or were inadmissible; and if these letters were written by the defendants and found their way into the mail, the jury would be authorized to infer that they were deposited in the mail by the defendants, which would be enough to entitle the envelopes themselves to admission.

3. That the court erred in allowing the order of T. B. Brown, dated 12–6–91, to the freight agent at Greenville, Alabama, to deliver freight to Mr. Kirkpatrick, and the paper thereto attached, to be introduced in evidence to the jury. Brown testified that E. H. Cook, one of the defendants, ordered a box of shoes for him from W. L. Douglas & Co., Brockton, Massachusetts, and stated to the witness at the time he made the order " Let's beat them," and soon after said order was made, Cook informed the witness that the goods had come and were in the warehouse at Greenville, Alabama. Soon after this he got a message from Cook that the shoes were in Cook's store at Garland. Witness never gave Cook any order; (for the goods?) but there was other evidence that witness did give Cook an order on the freight agent at Greenville, to " deliver my freight to Mr. Kirkpatrick." This order was admitted, together with the receipt of the railroad company for a box of merchandise, in the name of T. B. Brown, signed by E. H. Cook, Garland, Alabama, a bill of lading showing that W. L. Douglas had shipped a case of merchandise to Brown at Greenville; and local freight way bills showing the shipment of the goods by Douglas, and their consignment to E. H. Cook & Co.

As the indictment charges, as one of the acts in furtherance of the conspiracy, that Brown deposited in the post office a letter addressed to the Douglas Company, containing an application for an agency, and an order for shoes, which letter purported to be signed by T. B. Brown, we see no objection to the introduction of the order and the way bills of the railroads, as tending to show that the scheme was carried out as charged in the indictment, and proven by the testimony of Brown. They all relate to the facts alleged, and show that the order to the Douglas Company was carried out by the receipt of the goods, and their subsequent delivery to Cook.

4. The court erred in allowing a certain credit statement, dated January 17, 1891, and signed " A. J. Kendrick," to go to the jury as evidence ; and (5) in allowing the district attorney to state in his argument to the jury " to take the letters offered in evidence signed A. J. Kendrick, and the credit statement, signed A. J. Kendrick, when they retired to make up their verdict, and compare the two, and say whether one and the same man wrote both papers." As these two assignments of error relate to the same item of testimony, they may be properly considered together.

The bill of exceptions showed that Kendrick, one of the defendants, went on the stand as a witness in his own behalf, and was handed a credit statement purporting to have been signed by him, and proved to have been received through the post office by one of the parties to whom one of Kendrick's letters was addressed. The statement purported to have been made to the W. L. Douglas Shoe Company by A. J. Kendrick, for the purpose of satisfying the company of his ability to pay, and with a view of opening and establishing a line of credit with them and purchasing goods of them. This statement showed assets to the value of $5800 and liabilities to the amount of $930, leaving a surplus of $4870. The district attorney asked Kendrick whether he wrote the same, or had it written, to which he replied that he did not write the same or have it written. The district attorney thereupon offered the statement in evidence, and it was admitted under the objection of the defendants.

As this statement was proved to have been received through the post office by the parties to whom one of Kendrick's letters was addressed, and was taken from the post office, we think it was competent for the jury to compare the handwriting of the letters, several of which were offered in evidence and admitted by Kendrick to have been written and signed by him, with the handwriting of the statement itself, and say whether they both emanated from him.

In the case of *Moore* v. *United States*, 91 U. S. 270, the question was whether the Court of Claims could compare a document purporting to have been executed by the claimant with his signature to another paper in evidence for another purpose in the case, respecting which there seems to have been no question, and from that comparison adjudge that the signature was his. In delivering the opinion Mr. Justice Bradley observed : " The question is whether they " (the Court of Claims) " may determine the genuineness of a signature by comparing it with other handwriting of the party. By the general rule of the common law this cannot be done either by the court or a jury, and that is the general rule of this country. . . . But the general rule of the common law, disallowing a comparison of handwriting as proof of signature, has exceptions equally as well settled as the rule itself. One of these exceptions is, that if a paper admitted to be in the handwriting of the party, or to have been subscribed by him, is in evidence for some other purpose in the case, the signature or paper in question may be compared with it by the jury." This case is cited with approval in *Williams* v. *Conger*, 125 U. S. 397, 414, in which it was held, that, while papers not otherwise competent cannot be introduced for the mere purpose of enabling the jury to institute a comparison of handwriting, yet where other writings, admitted or proved to be genuine, are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury with that of the instrument or signature in question, and its genuineness inferred from such comparison. To the same effect is *Hickory* v. *United States*, 151 U. S. 303. As the letters with which the comparison was made were admitted by

Kendrick to have been written by him and were properly in evidence, it was competent for the court to submit to the jury the disputed statement, and to permit them to make a comparison and say whether the same man wrote both papers. The statement itself was clearly competent as bearing upon the intent to defraud.

There was no error in the rulings of the court below, and its judgment is, therefore,

*Affirmed.*