## UNITED STATES v. GREENBAUM.

(District Court, E. D. Michigan, S. D.   May 16, 1918.)

### No. 5855.

1. INDICTMENT AND INFORMATION ⊜⟹111(2)—BANKRUPTCY—NEGATIVING EXCEPTION—CONCEALING PROPERTY.

There being no express exception or reference to exemptions in Bankruptcy Act July 1, 1898, § 29b (Comp. St. 1916, § 9613), an indictment thereunder for concealing property need not allege the property was not exempt from execution under state laws, though section 6 (section 9590) secures to bankrupts allowance of exemptions under such laws.

2. INDICTMENT AND INFORMATION ⊜⟹111(3)—STATUTORY OFFENSE—NEGATIVING EXCEPTIONS.

Unless a statute creating an offense so defines it that it cannot be properly described without negativing an exception, an indictment for violation thereof need not negative the exception.

3. INDICTMENT AND INFORMATION ⊜⟹86(2)—SPECIFYING TIME AND PLACE.

An indictment for concealing property while bankrupt, alleging the concealment took place at the city of Detroit, in this district, on July 5, 1916, specifies the place.

4. INDICTMENT AND INFORMATION ⊜⟹87(2)—SPECIFYING TIME.

An indictment for concealing property while bankrupt, alleging the concealment took place at the city of Detroit, in this district, on July 5, 1916, specifies the time.

5. BANKRUPTCY ⊜⟹494—CONCEALING PROPERTY—INDICTMENT.

Though Bankruptcy Act July 1, 1898, § 1a (22) (Comp. St. 1916, § 9585), provides that the word "conceal" shall include "secrete, falsify, and mutilate," it is sufficient, in an indictment under section 29b (section 9613), to allege a concealment by using the word "conceal," without stating how or in what manner it was accomplished.

6. INDICTMENT AND INFORMATION ⊜⟹71—PURPOSES OF INDICTMENT—CERTAINTY.

The purposes of an indictment are to inform accused, with reasonable certainty, of the nature of the offense charged, so he may properly prepare his defense, to enable him to use his acquittal, if again accused, and to enable the court to determine whether acts alleged to constitute a crime would warrant a conviction thereof, if proved.

7. INDICTMENT AND INFORMATION ⊜⟹110(4)—FOLLOWING LANGUAGE OF STATUTE—EXCEPTIONS TO RULE.

An indictment based on an alleged violation of a statute sufficiently describes the nature of the crime charged, if it follows the language of the statute, unless it is too indefinite to accurately indicate, without addition of other words, the essential elements of the alleged crime.

8. BANKRUPTCY ⊜⟹494—CONCEALING PROPERTY—INDICTMENT.

An indictment under Bankruptcy Act July 1, 1898, § 29b (Comp. St. 1916, § 9613), charging concealment by a bankrupt of a certain large por-

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion of his property, consisting of money and merchandise, setting forth its general nature and alleging a more particular description is unknown, together with a bill of particulars showing that the property referred to was all the property belonging to him on a specified date, except the portion turned over or accounted for, sufficiently describes the property.

9. BANKRUPTCY ⬤═494—CONCEALING PROPERTY—INDICTMENT.

An indictment under Bankruptcy Act July 1, 1898, § 29b (Comp. St. 1916, § 9613), alleging that on a certain date the bankrupt had certain property of a certain value, and that when he became bankrupt, about four months later, the aggregate of all property turned over to his trustee was much less than he owned on the date mentioned, is not defective, as showing that defendant was merely being compelled to make an accounting, and was not charged with a crime.

10. CRIMINAL LAW ⬤═552(1)—EVIDENCE OF CRIME—NECESSITY OF DIRECT EVIDENCE.

It is not necessary that the commission of a crime should be proved by direct evidence, and it may be proved by circumstantial evidence; that is, by inferences properly drawn from circumstances.

Joseph Greenbaum was indicted for concealing property while a bankrupt, and he demurs to the indictment. Demurrer overruled.

John E. Kinnane, U. S. Dist. Atty., of Detroit, Mich.
Selling & Brand, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This matter is before the court on a demurrer to the indictment. The indictment charged the defendant with having knowingly and fraudulently concealed, while a bankrupt, certain property, belonging to the bankrupt's estate, from the trustee in bankruptcy. The gist of the indictment is found in the following allegation therein:

"And the grand jurors aforesaid upon their like oaths further present that on, to wit: the fifth day of July, A. D. 1916, the said Joseph Greenbaum at the city of Detroit in the said division and district and within the jurisdiction of this honorable court, who was then and there a bankrupt as aforesaid, and while he was such bankrupt, did unlawfully, knowingly, and fraudulently and feloniously conceal a certain large portion of his property belonging to the bankrupt estate of the said Joseph Greenbaum from the said Harry C. Moulthrop, trustee as aforesaid of the property belonging to the estate in bankruptcy of the said Joseph Greenbaum, said property then and there consisting of money and merchandise of the value of, to wit, thirty thousand dollars lawful money of the United States, said merchandise comprised in said portion of said property being then and there of the following nature and character, to wit, women's and children's clothing and ready to wear garments, general clothing, dry goods, and merchandise, and being of the general kind and description manufactured and handled at wholesale and retail by said Joseph Greenbaum at his place of business at, to wit, No. 285 Gratiot avenue in said city of Detroit, a more particular description of said merchandise being to these grand jurors unknown, and a more particular description of the denomination, kind, and character of said money being also to these grand jurors at this time unknown—contrary to the form, force, and effect of the act of Congress in such case made and provided, and against the peace and dignity of the United States of America."

Defendant demanded a bill of particulars, specifying and describing the property which he is charged with having concealed, and the place, time, and manner of such concealment. The court having or-

dered the furnishing of as definite a bill of particulars as was possible, the district attorney filed what he termed "the government's bill of particulars as far as it is now able to furnish such," as follows:

The following is the government's bill of particulars as far as it is now able to furnish such, to wit:

| | |
|---|---:|
| Amount of merchandise and assets on hand per statement of Jan. 1, 1916............................................... | $20,090.27 |
| Less liabilities then owing ....................... .......... | 6,764.49 |
| Leaving net assets and property........................... | $13,325.78 |
| Plus net equity in house and lot........................... | 3,500.00 |
| Total net worth Jan. 1, 1916............................ | $16,825.78 |
| Merchandise purchased by defendant on credit between Jan. 1, and May 18, 1916 (the date of filing petition in bankruptcy), over and above amounts paid.............................. | $36,352.43 |
| Total property and assets ............................ | $53,178.21 |
| Less total property surrendered and turned over to his trustee .................................. $6,000.00 | |
| Less expenses and probable losses............... 5,000.00 | $11,000.00 |
| | $42,178.21 |

Such bill of particulars also recited that the government was unable to furnish the bill of particulars desired by defendant, because the information demanded by defendant was from the very nature of the case not within the knowledge of the government, but was well known to defendant. It was alleged that the government—

"is unable to state the exact kind, quantity, and value of the merchandise and chattels concealed by defendant, or the portion of such property that was in the form of money, or the kind of money, or denominations thereof, for want of knowledge, such being peculiarly within the knowledge of defendant, upon whom rests the burden of proof to show that he turned over to his trustee all of his assets and to explain the apparent disappearance of property traced to and owned by him."

Defendant thereupon filed a demurrer to the indictment on 16 different grounds, which may be grouped under three heads, as follows: First, that the indictment does not state any crime or misdemeanor punishable under the statutes of the United States; second, that said indictment does not sufficiently describe the time, place, or manner of the alleged concealment; third, that said indictment does not sufficiently describe the property alleged to have been concealed.

[1] 1. The contention that the indictment does not state any offense punishable under the statutes of the United States is based on the ground that there is no allegation in the indictment that the property alleged to have been concealed was not exempt from execution under the laws of the state of Michigan, wherein the defendant was domiciled for the six months immediately preceding the time of the filing of such indictment, and counsel refers to section 6 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [Comp. St. 1916, § 9590]), which provides that such act—

"shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in

the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

The provision of the Bankruptcy Act upon which this indictment is based is found in section 29b (section 9613), which provides, among other things, as follows: ·

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge from his trustee any of the property belonging to his estate in bankruptcy."

The contention of counsel just stated is clearly without merit. If it is the claim of the bankrupt that the property which he is thus charged with having knowingly and fraudulently concealed from his trustee consisted of his exemptions, and that for that reason he could not be guilty of having knowingly and fraudulently concealed such property, that is a matter of defense, to be presented upon his trial.

[2] It will be noted that the section of the Bankruptcy Act on which this indictment is based does not contain any express exception or refer to the exemptions of the bankrupt; and it is well settled that, unless a statute creating an offense so defines such offense that the latter cannot be properly described without negativing an exception, an indictment charging a violation of such statute need not negative the exception. United States v. Cook, 17 Wall. (84 U. S.) 168, 21 L. Ed. 538; Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667; United States v. Stone (D. C.) 135 Fed. 392; United States v. Freed (C. C.) 179 Fed. 236. As was pointed out in United States v. Cook, supra:

"Such an offense must be accurately and clearly described, and if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, then it, cannot be omitted in the pleading; but if it is not so incorporated with the clause defining the offense as to become a material part of the definition of the offense, then it is matter of defense, and must be shown by the other party, though it be in the same section, or even in the succeeding sentence."

It is entirely plain that this contention must be overruled.

[3, 4] 2. Nor am I able to agree with the contention that this indictment does not specify in detail exactly the time, place, or manner of the alleged concealment, and that it is therefore defective. It will be noted that such concealment is alleged to have taken place at the city of Detroit in this district and on, to wit, July 5, 1916. It therefore certainly cannot be said that the time and place of the alleged offense are not specified in the indictment.

[5] It is urged that the word "conceal" has no such settled technical meaning that its use sufficiently denotes every element necessary to constitute an offense under the statute, and it is insisted that, as section 1a (22) of the Bankruptcy Act of July 1, 1898 (Comp. St. 1916, § 9585), provides that the word "'conceal' shall include secrete, falsify, and mutilate," it is not sufficient to allege a concealment by using the word "conceal," without stating how and in what manner the alleged concealment was accomplished.

[6] The purposes of an indictment are to inform the accused, with

reasonable certainty, of the nature of the offense with which he is charged, so that he may make proper preparation for his defense, to enable him to use his acquittal on such charge, if he is subsequently again accused of the same crime, and to enable the court to determine in advance of the trial whether the acts of the accused alleged to constitute a crime would, if proved in court, warrant a conviction for such crime. United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Cochran v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704; Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392. In the language of the Supreme Court in United States v. Cruikshank, supra:

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had."

[7] It is also well settled that an indictment based upon an alleged violation of a statute sufficiently describes the nature of the crime charged against the accused if it follows the language of such statute, unless such language is too indefinite to accurately indicate, without the addition of other words, the essential elements of the alleged crime. United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819; United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; Evans v. United States, supra; Potter v. United States, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214. As was said in Potter v. United States, supra:

"The offense charged is a statutory one, and while it is doubtless true that it is not always sufficient to use simply the language of the statute in describing such an offense (United States v. Carll, 105 U. S. 611 [26 L. Ed. 1135]), yet if such language is, according to the natural import of the words, fully descriptive of the offense, then ordinarily it is sufficient."

Applying this rule to the present case, I think it clear that the word "conceal" is sufficiently descriptive to apprise the defendant of the nature of the crime alleged, without the addition of words to indicate the exact means by which the alleged concealment was accomplished. United States v. Comstock (C. C.) 161 Fed 644; United States v. Rhodes (D. C.) 212 Fed. 513. As was pointed out in United States v. Comstock, supra:

"Under the statute now in question, the mode of concealment is entirely immaterial. * * * By this indictment the defendant is charged with fraudulent concealment of goods, and is given due notice that evidence may be offered against him of various modes of concealment. To require the government to specify a particular mode of concealment would unnecessarily limit it to a particular mode, and deprive it of the right to introduce evidence that all the modes of concealment—the actual hiding of goods, hiding of books, accounts, or documentary evidence, by secreting or mutilating the same, etc.— were used. It is unnecessary to set forth the evidence upon which the government relies, and the defendant, as in ordinary cases, must take notice that any testimony relevant to the question of fraudulent concealment may be introduced against him."

The following language used by the court in Burton v. United States, supra, is applicable here:

"The averments of the indictment were sufficient to enable the defendant to prepare his defense, and, in the event of acquittal or conviction, the judgment could have been pleaded in bar of a second prosecution for the same offense. The accused was not entitled to more, nor could he demand that all the special or particular means employed in the commission of the offense should be more fully set out in the indictment. The words of the indictment directly and without ambiguity disclosed all the elements essential to the commission of the offense charged, and therefore, within the meaning of the Constitution and according to the rules of pleading, the defendant was informed of the nature and cause of the accusation against him."

The gist of the offense charged against the defendant is the knowing and fraudulent withholding of property by him, while a bankrupt, from his trustee. If he has so withheld property belonging to the bankrupt estate, as alleged in the indictment, he is guilty of a violation of the section of the Bankruptcy Act in question. Whether such a concealment was accomplished by secreting, falsifying, mutilating, or through other means, is entirely immaterial. The object of this statute is the protection of creditors from unscrupulous debtors, willing to evade the payment of just debts by wrongfully failing to turn over to the bankruptcy court property which in justice and in law no longer belongs to them. Congress, has wisely declared such conduct to be a criminal offense, and the courts ought so far as possible to give effect to the obvious meaning of the statute.

If the contention of counsel were adopted, it would place a premium upon the skill with which the concealment of such property was accomplished. The unjust result which would follow can be readily appreciated. If the bankrupt were only clever and skillful enough to succeed in so concealing his property that neither the property nor the means whereby it had been concealed could be discovered, the successful culprit would thereby gain immunity from prosecution and the opportunity to freely enjoy the fruits of his nefarious enterprise. Congress certainly never intended such a result, and the courts should not permit the manifest object of this legislation to be thus thwarted. The contention is overruled.

[8] 3. It is urged that the indictment is defective, because it does not sufficiently describe the property alleged to have been concealed, and it is insisted that the indictment, taken in connection with the bill of particulars, shows that the defendant is not charged with having concealed any specific property properly described, but that this prosecution is merely an attempt by the government to compel an accounting by the defendant through the means of a criminal prosecution.

I do not agree with this contention. It will be noted that the defendant is charged with having knowingly and fraudulently concealed "a certain large portion of his property, * * * consisting of money and merchandise of the value of, to wit, thirty thousand dollars." The general nature of the said property is set forth, and it is alleged that a more particular description thereof is unknown. The bill of particulars shows that the property which the defendant is charged

with having thus concealed is all of the property belonging to him January 1, 1916, except the portion thereof which he subsequently turned over, or accounted for, to his trustee. It seems to me that these allegations so refer to and identify the property alleged to have been concealed as to reasonably inform the defendant as to what particular property is meant, and to protect him, in the event of an acquittal, from a subsequent prosecution on the same charge. From the very nature of this crime, which I have already discussed, it would be ex-ceedingly difficult, if not impossible, for the government in such cases to give a more specific description of the property alleged to have been concealed; and I know of no reason why it should be compelled to do so. In the case of Ripon Knitting Works v. Schreider (D. C.) 101 Fed. 810, the same contention was made, and in overruling it the court used the following language, which seems to me equally applicable to the present case:

"The real point upon which the bankrupt relies is that he was unable to produce evidence, because he was not informed as to what particular prop-erty or money was supposed to be abstracted or concealed; in other words, that no particular property or money was described in any pleading on file. This ground of defense is technical, but unavailing. The principles of rea-son and justice do not exact of those who have incurred losses by extend-ing credit to a dishonest merchant the impossible thing of tracing the pro-ceeds of merchandise which he has handled before compelling him to sur-render money in his possession which rightfully should be applied to the pay-ment of their accounts. In this case it is impossible for the trustee or the creditors to identify the pieces of money which have come to the bankrupt's hands, or to identify or describe the particular pairs of shoes which were sold for money which the bankrupt now conceals; and, being impossible, it is unnecessary."

[9] Nor do I agree with the contention that the defendant is merely being compelled to make an accounting, and is not charged with a crime. The government alleges that on the 1st of January, 1916, the bankrupt had in his possession certain property, having a certain val-ue, and that when he became a bankrupt, about four months later, the aggregate of all of the property which he turned over to his trustee was much less than what he had owned on the date first mentioned. Necessarily, therefore, if these allegations are true, either the bank-rupt had lost or disposed of the missing property between such date and the date of his bankruptcy, or else at the time that he turned over to the trustee what purported to be all of the property belonging to his estate in bankruptcy he concealed this missing property. There can be no escape from this conclusion. If the defendant can satisfactorily explain this shortage, by accounting for its disappearance before he became a bankrupt, he cannot, of course, be convicted of concealing such property from his trustee. If, however, it is shown that he cannot account for such shortage, the necessary inference would be that he has withheld—that is, concealed—this property from his trus-tee. Stern v. United States, 193 Fed. 888, 114 C. C. A. 102. As was said in the case just cited:

"It is difficult to imagine circumstances under which the burden of ex-plaining a fact or situation would be more clearly and peremptorily cast up-on those charged with a criminal offense than was the burden in this case cast

upon the defendants to account for the disposition of the large sum of money traced as coming into the hands of those defendants."

.It is well settled that in bankruptcy proceedings, either on application for a discharge or on summary order to deliver assets to the trustee, when it is shown that shortly before the filing of the petition in bankruptcy the bankrupt owned certain property, and that such property was not subsequently accounted for or turned over to the trustee, these facts justify the inference that such property has been concealed by the bankrupt. In re Meyers (D. C.) 96 Fed. 408; In re Finkelstein (D. C.) 101 Fed. 418; In re Boyden (D. C.) 132 Fed. 991; In re Jacobs & Verstandig (D. C.) 147 Fed. 797; In re Lasky (D. C.) 163 Fed. 99. As was said in Re Meyers, supra:

"When, as in the case of this firm, a large shrinkage or disappearance of assets within a short period preceding failure cannot be explained in any rational or intelligible manner, the inference is justified of a fraudulent withdrawal and concealment of assets."

In the language of In re Lasky, supra:

"The property of a bankrupt estate, traced to the recent control or possession of the bankrupt, is presumed to remain there until he satisfactorily accounts to the court for its disposition or disappearance. * * * A merchant should not be permitted to shut his eyes to the disappearance of his goods, and when called upon by the court to account therefor escape the penalty of the law by simply saying: 'I have not the goods. I have no money.'"

[10] I see no reason why this same rule should not apply to the present case. If the tracing of property into the hands of a bankrupt before his bankruptcy, coupled with proof of his failure to account for such property afterwards, warrants, in a civil proceeding, an inference of fact that the bankrupt has concealed such property, it would seem to logically follow that the same evidence may warrant the same inference in a criminal proceeding, provided, of course, that it satisfies the jury beyond a reasonable doubt of the fact to be proved. It is not necessary that the commission of a crime should be proved by direct evidence. It may be proved by circumstantial evidence; that is, by inference properly drawn from circumstances. This court cannot say that if, on the trial of the defendant here, the government prove circumstances from which an inference of concealment may properly be drawn, the jury would not be justified in finding defendant guilty of the crime charged. As was pointed out by the court in Stern v. United States, supra:

"We may assume, from our knowledge of human affairs and human conduct, that the offenses denounced by the Bankrupt Law and set forth in the indictments are not such as can be readily proved by direct testimony. The very description of the offense indicates that this must be true. 'Concealment' is the very essence of the conduct denounced by the law, and a court and jury, in administering this law, are not dealing with open and flagrant acts of the defendant, but with the fact of concealment itself. The evidence, therefore, in such cases, must accommodate itself to the issue to be tried, and be such as in the practical affairs of life tends to produce belief and conviction in the minds of those to whom such evidence is addressed."

I am satisfied that the allegations of this indictment, taken in connection with the bill of particulars, are sufficient to inform the defend-

ant of the nature of the offense with which he is charged, to enable him to prepare his defense, to protect him against a subsequent prosecution on the same charge, and, if established by proper evidence, to show a violation of the statute in question. As was said by the Supreme Court, speaking through Mr. Justice Brown, in Evans v. United States, supra:

"While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove."

The demurrer is overruled.

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes