## CORBETT v. UNITED STATES.
### No. 10783.

Circuit Court of Appeals, Eighth Circuit.
April 8, 1937.

Ira B. Burns, of Kansas City, Mo. (Paul T. White, of Kansas City, Mo., on the brief), for appellant.

Richard K. Phelps, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and THOMAS, Circuit Judges, and MUNGER, District Judge.

THOMAS, Circuit Judge.

The appellant was convicted of a scheme to defraud in the execution of which the United States mails were used in violation of section 215 of the Criminal Code (18 U.S.C.A. § 338), and he appeals.

The transaction charged in the indictment and described in the testimony was executed in 1935.. The appellant had in his possession six forged $1,000 bonds of the city of Omaha, Neb., each bearing interest at the rate of 4¼ per cent. payable semiannually on May 1st and November 1st. The bonds were dated November 1, 1925, and matured November 1, 1945. The interest coupons maturing prior to May 1, 1935, had been clipped.

On January 25, 1935, appellant persuaded Mrs. Myrtle S. Wilson of Kansas City, Mo., to negotiate for him a loan of $5,000 at the City National Bank & Trust Company of Kansas City, using the forged bonds as collateral. At his request she executed the loan upon her own note for 90 days and delivered to him the proceeds.

When the note matured about April 25, 1935, appellant gave Mrs. Wilson $75 with which to pay the interest and requested her to renew the note, leaving the bonds as collateral. At the same time he asked her to clip the coupons and send them in for payment and turn the money over to him. In accordance with his request, Mrs. Wilson renewed the note; and an officer of the bank clipped the coupons, placed them in an envelope, and mailed them to the Federal Reserve Bank in Omaha with a collection letter to the county treasurer of Douglas county. Upon receipt of the coupons in Omaha they were presented to the county treasurer for payment, marked "forged," and returned. Upon the discovery of the forgery, Mrs. Wilson paid the note at the bank and endeavored without success to recover from appellant.

Reversal is urged on four grounds, based upon appropriate assignments of error. Appellant's propositions may be summarized as follows: (1) The transaction in which the fraud was perpetrated was complete before the mails were used, and the letter, therefore, did not contribute to carrying out the scheme; (2) there was a variance between the charge in the indictment and the proof; (3) the proof failed to show that the letter referred to in the indictment was ever placed in the United States mails; and (4) the court erred in refusing a requested instruction.

The first contention of appellant is that the mail was not used until the last days of April, and that the scheme to defraud ended on January 25th when the money, $5,000, was obtained; and that the

attempt to cash the coupons and the use of the mails for that purpose was no part of the execution of and not in furtherance of the scheme to defraud. He relies upon Mc-Near v. United States (C.C.A.10) 60 F. (2d) 861, 863; Barnes v. United States (C.C.A.8) 25 F.(2d) 61. It is true, as held in the cited cases, that a letter mailed in connection with an entirely different transaction cannot be said to be for the purpose of executing a scheme to defraud. But the cashing of the coupons in this instance was a part of the scheme charged in the indictment. It was contemplated as an element of the scheme that a loan of $5,000 would be secured at a bank upon a 90-day note secured by the forged bonds as collateral. The indictment alleges that the defendant represented to Mrs. Wilson "that said loan would only be needed for a period of ninety (90) days from the date of the making thereof, but that if the said note had to be renewed at the expiration of the ninety (90) days that he would send and cause to be sent in the coupons attached thereto (the bonds) payable as aforesaid on the 1st day of May 1935 for the purpose of paying the interest upon said loan."

On the 25th day of January appellant told Mrs. Wilson that the "interest on the bonds would be almost enough to pay the interest on the loan"; and on April 25th he told her "to have the coupons clipped and sent to Omaha * * * so that the money would be available as soon as possible. * * *" He advanced the $75 necessary to pay the interest and directed Mrs. Wilson to turn the proceeds from the coupons, about $129, over to him when it arrived. Evidently he assumed that the forgery would not be detected if the coupons were sent in for collection through the bank.

The scheme alleged in the indictment was a continuing one. It was not limited to a scheme to defraud Mrs. Wilson and the Kansas City bank only. It is charged that the scheme contemplated defrauding "that class of persons, buying, selling, transferring, negotiating, investing in or making loans on municipal bonds and securities." This charge is supported by the fact that about May 1st, after the note was renewed at the bank and before the forgery was discovered, appellant took to Mrs. Wilson seven other bonds of the same kind and asked her to get a loan on them. The scheme was at that time, after the letter had been sent to Omaha, still in the course of execution. That the specific use of the mails alleged and proved, therefore, tended to contribute both to the immediate and to the subsequent execution of the scheme cannot be doubted. Brady v. United States (C. C.A.9) 26 F.(2d) 400, 401. It is obvious that to secure the renewal of the note at the bank and to keep the way clear for disposing of other forged bonds it was necessary to keep the bank and Mrs. Wilson satisfied and unsuspicious. Farmer v. United States (C.C.A.2) 223 F. 903, 910; Stewart v. United States (C.C.A.8) 300 F. 769, 774. As said in the McNear Case, supra, relied upon by appellant, "A letter is violative of the statute, if its tendency is to lull the recipient into a false sense of security, as a means of inducing or encouraging him to make further payments as contributions to a fraudulent scheme." It is equally violative of the statute to cause a banker to mail a letter when its tendency would be to encourage him to make further loans upon forged bonds and thus contribute to the furtherance of a fraudulent scheme.

The second proposition urged by the appellant is that there is a variance between the charge in the indictment and the proof in respect of the use of the mails. It is said the appellant was charged with causing a letter to be mailed to the county treasurer of Douglas county, Neb., whereas the evidence referred to a letter to the branch of the Federal Reserve Bank at Omaha.

The indictment charged that the appellant "did * * * place and cause to be placed in an authorized depositary for mail, to-wit, in the Post Office * * * in Kansas City * * * to be sent and delivered by the mail of the United States according to the direction thereon a certain letter addressed to the county treasurer of Douglas County, Omaha, Nebraska. * * *"

The evidence is to the effect that the coupons after they had been clipped from the bonds at the Kansas City bank were placed in an envelope with a collection letter addressed to the treasurer of Douglas county, Neb., and mailed by registered mail to the Omaha branch of the Federal Reserve Bank of Kansas City. When the letter arrived at the Bank in Omaha, it was sent by a messenger to the office of the county treasurer.

Upon this point it will be observed that it is not claimed that the letter in question was not carried from Kansas City to Omaha in the mails, nor that the proof op-

erated to prejudice appellant's case nor that it came as a surprise. The claim is that since the proof shows that the letter was sent to the addressee through the Federal Reserve Bank and a messenger instead of directly, the appellant "may" be exposed "to the injury of being put twice in jeopardy for the same offense." The appellant is entitled to protection against such risk if there be ground for the alleged peril. Wolpa v. United States (C.C.A.8) 86 F.(2d) 35, 38; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Burke v. United States (C.C.A.9) 58 F.(2d) 739, 741. There can be no danger of a second conviction for the same offense here, however. The identity of the letter is in reality all that is involved, and there is no confusion and no variance with respect to the letter. It was a collection letter accompanying the clipped coupons. It was the only letter of that kind sent or received. If upon a second trial any doubt existed as to its identity, the defense of former conviction may be established by the record in this case. Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704; Horn v. United States (C.C.A.8) 182 F. 721, 728.

Appellant's next contention is that there was no proof of facts sufficient to warrant the jury in drawing the inference that any letter was placed in the mails. It is not questioned that the letter was transported by some means from Kansas City to Omaha and that it was delivered to the county treasurer's office by a messenger from the Federal Reserve Bank. Was there evidence from which the jury was justified in finding that it was deposited in the post office at Kansas City to be sent by mail to Omaha? The testimony as to what occurred is without dispute. The witness Bradley, assistant cashier of the Kansas City bank where the transaction was handled, testified that the sending of the coupons was done under his direction; that he detached the coupons from the bonds and placed them in the collection department of the bank with instructions to mail them to the paying agent, the county treasurer of Douglas county, for payment. Gunther Stein testified that he was head of the mailing department of the same bank; that he placed the coupons with a collection letter addressed to the county treasurer in a brown envelope addressed to the Federal Reserve at Omaha, sealed the envelope, put the stamps on it, placed it with the rest of the registered mail in a mail bag, and it was taken over to the post office right away. And the deputy county treasurer of Douglas county testified that the coupons were presented to him for payment on May 1, 1935, by the Omaha branch of the Federal Reserve Bank in an envelope bearing the name of the City Bank & Trust Company. This testimony excludes any reasonable possibility that the letter was sent by express, a possibility suggested by appellant.

It is settled that the use of the mails in the execution of a scheme to defraud may be established by circumstantial evidence. Cochran v. United States (C.C.A.8) 41 F.(2d) 193, 205; Havener v. United States (C.C.A.10) 49 F.(2d) 196, 200. Further, when offered in evidence, the coupons were not objected to on the ground that there was not sufficient proof that they had been mailed. Cochran v. United States, supra; Stokes v. United States, 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667.

The appellant relies upon the cases of Brady v. United States (C.C.A.) 24 F.(2d) 397, and Freeman v. United States (C.C.A.) 20 F.(2d) 748, but the proof of mailing the letter in the instant case is much stronger than the proof presented in the cited cases. The proof here, though circumstantial in character, fully warranted the submission of the question of the use of the mails to the jury.

In this connection appellant contends that there is no evidence that he "caused" or had any thing to do with the mailing of any letter. This contention is without merit. Mrs. Wilson testified without objection and without contradiction that on April 25th, at the time appellant furnished her the sum of $75 with which to pay interest on the renewal note at the bank, appellant directed her "to have the coupons clipped and sent to Omaha * * * so that the money would be available as soon as possible"—"that he was anxious to have the interest money on the bonds as he was short." He did not direct Mrs. Wilson to use any particular means for transporting the coupons to Omaha. The authority conferred left the means, therefore, to her discretion. He was, under the broad instruction given, responsible for the means selected. The use of the mails was a natural sequence of the order which he gave, and he cannot be heard to deny that he "caused" their use. See United States v. Kenofskey, 243 U.S. 440, 443, 37 S.Ct. 438, 61 L.Ed.

128

836; United States v. Weisman (C.C.A.2) 83 F.(2d) 470, 473; Barnard v. United States (C.C.A.9) 16 F.(2d) 451; Demolli v. United States (C.C.A.8) 144 F. 363, 6 L.R.A.(N.S.) 424, 7 Ann.Cas. 121.

■ Finally, appellant insists that the court erred in refusing to instruct the jury, as requested, that if the conduct of the defendant was as compatible with innocence as with guilt, it was their duty to acquit him. Upon this point appellant relies upon the case of McLendon v. United States (C. C.A.6) 13 F.(2d) 777, 779. In the opinion in that case it is said: "That idea in some form should be included in the charge where the evidence is wholly circumstantial or is both circumstantial and direct. * * * But was we think, included in the charge here. The court was careful to say more than once that defendant was entitled to every presumption of innocence respecting the various elements of the offense which the government was required to prove beyond a reasonable doubt." So it was in this case. The court instructed fully upon the burden resting upon the government to prove the elements of the offense beyond a reasonable doubt. With respect to a similar request Judge Learned Hand, speaking for the Circuit Court of Appeals of the Second Circuit in United States v. Austin-Bagley Corporation, 31 F.(2d) 229, 234, said: "We cannot agree that there are any inexorable formulas on the subject; it is enough that the judge shall in substance tell the jury that they must be satisfied beyond any reasonable chance of mistake. This caution we agree he must give, but to translate such an admonition into a rigid ritual is to forget the actual determinants of a verdict and to mistake shadows for reality." In this case the proof of the government is neither disputed nor explained. If believed, it is not consistent with innocence. There was, therefore, no occasion for giving the requested instruction. Gurera v. United States (C.C.A.8) 40 F.(2d) 338, 340. In connection with this point, the appellant insists that there is no direct evidence of any kind that he knew the bonds were forged. Knowledge, however, may be inferred from proved circumstances. There is testimony to the effect that he refused to tell Mrs. Wilson where he obtained the bonds. When Mrs. Wilson secured the loan at the bank, the appellant did not go into the bank but remained outside and sent her in with the bonds. His conduct was inconsistent with ignorance. It at least

warranted the jury in finding that he knew the counterfeit character of the bonds. To require the government to offer direct proof of the defendant's knowledge would be to require the impossible.

Judgment affirmed.