## REINING v. UNITED STATES.
### No. 12017.

Circuit Court of Appeals, Fifth Circuit.

April 20, 1948.

Rehearing Denied May 27, 1948.

Nathan R. Graham, of Tampa, Fla., for appellant.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The indictment charges in five counts uses of the mails to effectuate a scheme to defraud, and in a sixth count a conspiracy to commit those offenses and other similar ones, with other overt acts. The appellant George G. Reining was tried alone and convicted on all counts. He appeals, specifying as error rulings as to the sufficiency of the indictment, and the sufficiency of the evidence touching each count, on motions for mistrial on account of misconduct of jury and of the prosecuting attorney, and in admitting evidence. The sentence imposes consecutive terms of imprisonment on each count, so that each must be separately considered.

1. The indictment in each count is sufficient. The sole question argued is whether the description of the scheme to defraud, carried by reference into each count, is sufficient to inform of the nature of the offense charged, and whether it is a mere statement of arguments and opinions of the pleader rather than of facts found true by the grand jury. Seven printed pages are used in the description of the scheme. We find it easily understood, and as specific and detailed as it well could be made without the help of a party to it. The motion to dismiss the indictment was properly overruled.

2. The existence of the scheme was proved, as is usually the case, by evidence of what was done about it. All the circumstances and operations during the time from Jan. 1, 1943, to the filing of the indictment, during which it was charged to have been devised and used, were proper to be considered, and were capable in our opinion of causing in a jury's minds conviction beyond a reasonable doubt of its existence. In general the scheme was that Reining and James F. Boyer should cooperate in a distant part of the United States in posing as brokers of oil and gas leases on lands in Texas and by misrepresentation of the status of the leases and their own connections with large oil companies, would interest uninformed and credulous persons who would not investigate for themselves to lend money on the security of or to buy such leases, which were really worthless and known to Reining and Boyer to be so, so that leases on unproven territory which they got from a broker named Smith in San Antonio, Texas, for 12½ to 62½ cents per acre were disposed of as proven leases in the midst of oil wells in operation at prices from $10 to $37.50 per acre to the total loss of the investors. We need not state the details of the misrepresentations and the fictitious names used, and the cooperation between Reining and Boyer by one of them pretending to represent or have information about a large oil company in search of these very leases if a large block could be got, and the other appearing with the leases for sale, and their other methods of approach. The scheme was proven to exist and to have operated successfully during the years 1943 and 1944. There is abundant evidence to sustain the Sixth Count charging conspiracy and the overt acts therein set forth.

Additional questions are raised touching the other counts. As to Counts Three and Five, we find no sufficient evidence that the uses of the mail there charged were for the purpose of executing the scheme to defraud. The mailings charged are of two assigned leases, one to Mrs. Anna Vinson at Live Oak, Florida, and the other to Mrs. E. W. Thorpe at DeFuniak Springs, Florida. Each of these ladies had loaned money to Reining without any direct connection with oil and gas leases, but on open notes. At a later time the leases were sent to them to pay or secure the notes, but were not accepted. If the borrowings were fraudulent, the money had been gotten long before the mailings of the leases, and any fraudulent purpose in obtaining the money had been executed. It cannot be concluded that the leases were mailed to carry out or execute the scheme of getting this money. A reversal must be granted as to these counts. Kann v. United States, 323 U. S. 88, 65 S.Ct. 148, 89 L.Ed. 88, 157 A.L.R. 406.

■ As to the remaining counts, evidence is said to be lacking that Reining mailed or caused the mailing of the letters as charged. In the first count the letter and an envelope were introduced addressed to Smith at San Antonio, Texas, postmarked Mar. 8, 4:30 p. m., 1943, and with air mail stamps duly cancelled, on stationery of The Tides Hotel, St. Petersburg, Florida, which Smith testified he received by mail. The letter was signed with the name George G. Reining and enclosed a check in payment for leases on 640 acres to be assigned in 40-acre lots, and requested that all mail be sent to The Tides Hotel, St. Petersburg, Florida. Smith testified to sending the 40-acre assignments accordingly, and several of them appear in evidence as coming from Reining in Florida, and there is evidence that he was in and around St. Petersburg at the time. He offered no testimony whatever in explanation or denial. Independently of the genuineness of the signature to this letter it could be reasonably concluded he mailed or caused it to be mailed. But there is evidence that the signature is his; and if so, there is hardly a possibility that he did not mail the letter or cause it to be mailed. He offers no witness nor circumstance to show another explanation. There are in evidence three other letters so signed and sent to Smith about oil leases, at times when there was no apparent reason for anyone else to use and simulate Reining's signature. These letters were offered in evidence to show handwriting. The only objection made was that they were immaterial and irrelevant. This objection was not good. There was also in evidence the signature to the appearance bond discussed below. All the signatures appear to be the same.

As to the fourth count, the mailing was of a check payable to Boyer for $1,000, signed Horace Andrews. Andrews was dead at the time of trial, and the evidence as to the transaction with him was circumstantial. It is not so clear as might be, but under all the evidence in the case we have concluded that the jury were authorized to find that Boyer and Reining were in cooporation in this transaction and the check was caused by them to be mailed to effectuate the scheme. There was no error in admitting as circumstances the papers objected to.

■ 3. The signature to Reining's appearance bond was offered on a reopening of the case before the argument to the jury. Objection to the motion to reopen was overruled. The reopening was within the discretion of the court and not error. The deputy clerk identified it as the bond duly filed in this case. The bond purports to have been executed on April 12, 1945, in the District of Connecticut before a United States commissioner there, who certified in it that George G. Reining personally came and acknowledged himself bound to appear in the District Court of the United States for the Southern District of Florida at Tampa, etc. The signature is like that to the letters. Objections were urged and are now pressed that there was no compliance with the Act of Feb. 26, 1913, 28 U.S.C.A. § 638, which provides that a writing admitted or proved to be the handwriting of a person shall be competent as a basis of comparison by the jury. This Act was an enlargement of the common law rule on the subject, as that rule is stated in 20 Am.Jur., Evidence, Secs. 742, 743, and in Hickory v. United States, 151 U.S. 303, 14 S.Ct. 334, 38 L. Ed. 170; but under the common law "a pleading, recognizance or similar document filed by a party to the record and forming a part of the record may be made the basis of comparison." Id. Sect. 748. And in Moore v. United States, 91 U.S. 270, 23 L.Ed. 346, it is held that a paper admitted in evidence for some other purpose, respecting which there seems to have been no question, it being a power of attorney to enforce the claim in suit, might be used for comparison. See also Stokes v. United States, 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667. In the present case no denial was made even by counsel that the signature to the bond was genuine. The Commissioner certified that Reining appeared in person and executed the bond. Reining was at liberty under it at the very moment. Surely this was satisfactory proof of its genuineness. Under the common law and under the statute the bond was admissible.

■ The argument is further made that since the bond was exacted while Reining was under arrest, there was duress, and he is thereby made to testify against himself. But lawful arrest is not duress, else all appearance bonds would be invalid. And as to being forced to testify against himself by writing his name, he did not have to write it. He could have signed by mark or asked someone else to sign his name for him. These arguments are not good to exclude the signature, and they really concede its genuiness. See also Dean v. United States, 5 Cir., 246 F. 568. There was nothing like an unlawfully extorted confession.

■ 4. During the trial the local newspapers published a report of the trial, and in addition stated that one of the prosecuting attorneys had declared that the defendant Boyer was reported dead and had said he would take his life rather than face prosecution. At the request of counsel for the defense the court asked the jurors if they had seen the newspaper accounts. One juror answered yes and another that he had skimmed over it. The court stated to them, "Of course it is your duty not to be influenced by anything you read in the newspapers. I want to ask you if anything you have read in the newspapers would have any effect on you in your verdict, one way or the other." They all answered "No." The court continued, "Can you and will you disregard anything you have read in the papers and base your verdict solely on the evidence you hear from the witnesses on the stand and the law as given you by the court? Will you do that, each of you?" They answered "Yes." A motion for a mistrial was made and overruled. While it is regrettable that during a trial the newspapers sometimes add to or distort the court proceedings, and it is difficult to keep literate jurors from some contact with what is published, we find nothing so inflammatory here as to convince us that the purity of the trial was destroyed. The trial judge took appropriate action and was satisfied to proceed. His discretion does not appear to have been abused.

■ 5. In the concluding argument for the prosecution the District Attorney said of the letter alleged to have been mailed in Count One: "There is no question but that that letter went through the mail from Miami to A. C. Smith at San Antonio, Texas, and that he received it and produced it here. There is no dispute about that and no denial." A motion for mistrial was thereupon made, defense counsel claiming that the District Attorney turned to the defendant and pointed to him and in effect said like Nathan, the prophet, "Thou art the man." The court said he observed the district attorney at the time, and did not see any gesture that would indicate to anyone that he was referring to the defendant as making no dispute or denial, but the court thought he was referring to the argument of defendant's counsel just concluded, and was answering that argument. The court did not understand it as referring to the defendant not having testified and did not think any juror could have so interpreted it. It seems to us that this is the clear meaning of what was said. The facts stated are indeed even now undisputed and undenied by anyone. The inference from them that the defendant mailed it, which is the only thing the defendant could in reason deny, was of course disputed, but was not included in the statement. We see no ground for a mistrial here.

The verdict and sentence as to Counts Three and Five are set aside, but the judgment is otherwise affirmed.