SHENFIELD *v.* NASHAWANNUCK MANUF'G Co. and others.[1]

*(Circuit Court, S. D. New York. June 15, 1886.)*

1. PATENTS FOR INVENTIONS—PATENTABILITY—INVENTION.
    To make a suspender end of flat cord, in substantially the same way that suspender ends of round cord had been made, and in substantially the same way in which flat button ends had been made, for the purpose of fastening or securing other articles of wearing apparel than trousers, is an exercise of the ordinary skill of the housewife or the seamstress.

2. SAME—SUSPENDER ENDS.
    Letters patent No. 169,855, of November 9, 1875, to Abraham Shenfield, for an improvement in suspender button-straps, are void for want of patentable novelty.

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

In Equity.

*E. N. Dickerson* and *E. N. Dickerson, Jr.*, for plaintiff.

*Edmund Wetmore* and *Wm. A. Jenner*, for defendants.

SHIPMAN, J. This is a bill in equity to restrain the defendants from the infringement of letters patent No. 169,855, dated November 9, 1875, to the plaintiff, for an improvement in suspender button-straps. The nature and extent of the alleged improvement upon the pre-existing cut art described by the patentee in his specification, as follows:

"Suspender ends have been made of leather, felt, jean, and similar material, with the button-hole cut in the same, and in most instances the materials have been pasted together, in addition to lines of stitching surrounding the button-hole. Suspender ends have also been made of a round cord, with the ends turned back and fastened to form loops; but this round cord is objectionable, as it does not lie flat against the person or beneath the buttons. I make use of a suspender end made of a double flattened cord or strip, bent around into a loop, and united together, leaving sufficient of the loop open to form the button-hole. At the other end the suspender end is united to a buckle or clasp by a loop, or folded piece of leather, or other material, stitched to the suspender end. * * * The cord or strip of flat material is composed of silk, linen, cotton, worsted, or other suitable threads, or a mixture of two or more, and the threads are woven, braided, knitted, crocheted, or otherwise laid up into the form of a complete flat cord or strip, and when the strip is folded to form the button-hole loop, the seam at 3 may be made by sewing, knitting, crocheting, or otherwise; or the knitting or crocheting is commenced at the central line, 3, and extended at both sides thereof, and around the bottom-hole, by the successive ranges of interlocked loops."

The claim is for "the suspender end, made of a flat cord or strip of fibrous material, bent into a loop, laid flatwise, united at the inner edges, 3, and connected to the attaching pieces, *d*, as set forth."

It is stipulated by the respective counsel as follows:

"Complainant hereby admits that prior to the year 1870 there had frequently been publicly used, in the manufacture and wearing of cloaks and jackets, button-loops formed of flat braid, bent edgewise upon itself, and sewed together at the meeting edges, leaving an opening for the button-hole at the bend; that the ends of the braid in such button-loops were permanently attached to a button, or like device, which was affixed to one side of the body of the garment; and that the button-loop held the garment together by being buttoned onto a button, or like device, sewed to the other side of the garment; and that, when in use, the braid forming the button-loop rested under the button; and that such braids were made by machinery."

It thus appears that while suspender straps had been made of a round cord, with the ends turned back and fastened to form loops, the patented improvement consists of a cord or strip of any fibrous material, which is made flat in any way, bent into a loop, and united at the inner edges, and connected in the ordinary way with the buckle by a folded piece of leather or other material; and it further appears that button loops, to fasten the two sides of a cloak or jacket together, had been made in the same way, except that one end was permanently attached to a button or like device.

Whether the suspender end is, as it is called by the defendant, a double use of a well-known cloak loop, or is, as it is said to be by the plaintiff, an improvement upon a suspender end made of round cord, it equally seems to me that the improvement is devoid of invention. *Shenfield* v. *Schirmer*, 21 Fed. Rep. 241. To make a suspender end of flat cord in substantially the same way that suspender ends of round cord had been made, and in substantially the same way in which flat button ends had been made, for the purpose of fastening or securing other articles of wearing apparel than trousers, is an exercise of the ordinary skill of the housewife or the seamstress. The connection of the end to the attaching piece gives no patentable character to the loop. The attachment to the buckle is made in a customary, well-known way.

As the improvement, by whomsoever made, was not "new," in a patentable sense, it is unnecessary to examine the earnestly disputed question of priority of use.

The bill is dismissed.