## LEHMAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 6, 1903.)

No. 16.

1. CRIMINAL LAW—CONVICTION ON SEVERAL COUNTS.

A conviction generally on an indictment containing several counts will be sustained if any one of the counts is good and supported by the evidence.

---

¶ 1. See Indictment and Information, vol. 27, Cent. Dig. § 651.

**2. INDICTMENT—REPUGNANCY.**

An indictment for conspiracy to defraud by the use of the mails, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], as amended, is not bad for repugnancy because it charges in the same count that defendant conspired to defraud "by dealing and pretending to deal" in what is commonly called "green articles" and "spurious Treasury notes."

**3. SAME—DEFECTS CURED BY VERDICT.**

Objection·to repugnant averments in a count of an indictment should be taken by demurrer or motion to quash, or by exceptions to the charge; and under Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], which provides that proceedings shall not be affected by any defect or imperfection in matter of form only which shall not tend to the prejudice of the defendant, where not so taken the defect is cured by a general verdict of guilty.

**4. USE OF MAILS TO DEFRAUD—SUFFICIENCY OF EVIDENCE TO CONVICT.**

A conviction of conspiracy to defraud by pretending to deal in what is commonly called "green.articles" and "spurious treasury notes," to be accomplished by the use of the mails in violation of Rev. St. § 5480 [U.' S. Comp. St. 1901, p. 3696], *held* sustained by the evidence.

In Error to the Circuit Court of the United States for the Southern District of New York.

This case comes here by writ of error to review an order of the United States Circuit Court for the Southern District of New York directing a judgment upon a·verdict of a jury finding the defendant guilty of a violation of section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676]. No evidence was offered on behalf of the accused. At the conclusion of the evidence for the government, counsel for the accused moved to dismiss on the ground that the government had failed to make out a case on the indictment, which motion was denied, and exception was duly taken.

Joel M. Marx, for plaintiff in error.
W. S. Ball, for the United States.

Before LACOMBE and TOWNSEND, Circuit Judges, and HAZEL, District Judge.

TOWNSEND, Circuit Judge. The indictment comprises six counts, charging the accused, under section 5440 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3676], with conspiring to commit an offense against the United States, being an offense created by section 5480 of said Revised Statutes, as amended by the act of March 2, 1889, c. 393, § 1, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]. Section 5440 [U. S. Comp. St. 1901, p. 3676] makes it a crime for two or more persons to conspire to commit an offense against the United States where one or more of such parties did any act to effect the object of the conspiracy. The material portions of section 5480 as amended are as follows:

"If any person having devised or intending to devise, any scheme or artifice to defraud, or to sell, dispose of, loan, exchange, alter, give away, or distribute, supply, or furnish, or procure for unlawful use any counterfeit or spurious coin, bank notes, paper money, or any obligation or security

---

¶ 4. Matter relating to frauds and counterfeiting as nonmailable, see note to Timmons v. United States, 30 C. C. A. 86.

of the United States, \* \* \* or anything represented to be or intimated or held out to be such counterfeit or spurious articles, or any scheme or artifice to obtain money by or through correspondence, by what is commonly called the 'sawdust swindle,' or 'counterfeit money fraud,' or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'bills,' 'paper goods,' 'spurious Treasury notes,' \* \* \* to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post-office establishment of the United States or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any post-office, branch post-office, or street or hotel letter-box of the United States, to be sent or delivered by the said post-office establishment or shall take or receive any such therefrom, such person so misusing the post-office establishment shall, upon conviction, be punishable," etc.

The proof in support of the indictment, so far as is material to the questions raised herein, showed that one Gates received at Troy, N. H., a letter in an envelope postmarked, "New York, March 21, 1901," containing a circular offering to enter into negotiations for the sale to Gates of counterfeit money, and requesting him, if he wished to co-operate with the sender in said negotiations, to telegraph to L. Raymond, West Chester Depot, West Chester, N. Y., which Gates did; that thereafter he received at said Troy a second circular, signed, "B. Marvin," further explaining the scheme, and inclosing a genuine $1 bill, which purported to be a sample of the sender's work; and that he (Gates) afterward sent other telegrams, following the instructions in said letter, to the effect that he would come to New York for the purpose of purchasing some of said counterfeit money.

Samuel B. Davis, a detective, testified that on May 18, 1901, he went to the Cosmopolitan Hotel, at New York, registered as L. E. Gates, and took a room; that as he was standing in the elevator he heard some one say in the telephone, "Gates is here," and shortly thereafter he was called to the telephone, and a person claiming to be B. Marvin arranged for a meeting with him at 73 Park Place. The rest of the evidence is as follows:

"I walked down as far as that corner, Park Place and West Broadway, and I was approached by a party. Q. Where were you when you were approached? A. Standing on this corner, or near the corner, on Park Place. A party came up to me and shook hands; said, 'Good morning.' I said, 'Good morning.' He said, 'Are you Gates?' I said, 'Yes.' I said, 'Are you Marvin?' and he said, 'Yes;' and I said, 'I am stock 68.' I see that party in the courtroom. He is the third gentleman at that table. I mean the defendant sitting here behind counsel. Q. What next? A. I asked him if he had his goods with him. He said, 'No,' and he commenced to laugh. I recognized the man as soon as I seen him. Q. You knew him? A. I knew him; yes, sir. Q. Go on. A. I asked him if he had the goods with him, and he said no; he didn't have them with him; he would have to go to New Jersey for them; and he commenced to laugh then, and I commenced to laugh, and he said—turned around and said, 'I will see you later,' and says, 'I will meet you by and by;' and I says, 'No; I guess I will take you along now.' Q. Was anything said, whether you had your money with you? A. I told him that I had my money with me, and wanted to know if he had the goods with him. We had a conversation in regard to that, anyhow. I took him into custody immediately. Q. Anything said about Newark in that conversation? A. It was somewhere in New Jersey. The conversation was

to go to New Jersey. I don't remember the town it was. Q. you don't remember whether it was Newark or not? A. To the best of my recollection, it is Newark, but I wouldn't swear to that, because it was some place in New Jersey he said he would go."

The witness stated also on cross-examination that the accused recognized him, and further testified as follows:

"Q. And the recognition, so far as you know, was almost mutual, wasn't it? A. I cannot state whether it was mutual or not. I know that he recognized me afterwards, and that was the reason I arrested him. He wouldn't have anything more to do with me. I made the arrest right there. He did not offer to produce any green goods. Q. Did he say he was the party there to produce the green goods? A. No; not in so many words he didn't. Q. Did he say he had the green goods in Newark? A. Said he could go over there and get them. Get them for me. Q. After he recognized you? A. That was just before he walked away. I am positive of that. Absolutely positive."

The only further material testimony was that of Anthony Comstock, that on or about the same dates he received through the post office at New York City similar circulars, with similar instructions, and certain telegrams, being the originals of the messages sent by said Gates.

All of the counts in the indictment, except the fourth count, charge the accused with said conspiracy to defraud certain persons "by dealing and pretending to deal in what is commonly called 'green articles' and 'spurious Treasury notes.'" The fourth count charges said conspiracy "by pretending to deal in what is commonly called 'green articles' and 'spurious Treasury notes,' and that it was the purpose and design of such conspirators to convert to their own use any and all money which might be obtained by them by and through the said conspiracy." If such count could be sustained on the evidence, it would be sufficient to support the general verdict of guilty on all the counts. Evans v. United States, 153 U. S. 584, 595, 14 Sup. Ct. 934, 38 L. Ed. 830; Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Milby v. United States, 120 Fed. 1, 57 C. C. A. 21.

It is urged by counsel for the accused that there was no evidence to support said count. We are not satisfied that this contention is correct. That the second circular received by Gates contained a genuine $1 bill, which purported to be a sample of the sender's work, may be considered as inconsistent with the idea that the goods afterward to be delivered should be counterfeit, because a comparison of the genuine note with the spurious ones might have disclosed to the supposed intending purchaser that they were not the same as the sample. And we think it was competent for the jury, provided they found the fact of a conspiracy to defraud, to find upon the evidence that it was such a conspiracy, intended to be effected by sending genuine notes under the pretense that they were what the party was dealing in, and that in fact he was not dealing in green articles or spurious Treasury notes at all. But without disposing of this question, we are brought to a consideration of the more serious objection raised to the other counts.

Counsel for the accused contends that each of said counts is fatally defective because the allegations of a conspiracy to defraud by "dealing and pretending to deal" in what is called "green articles" and

"spurious Treasury notes" are repugnant to each other, and impossible of proof in the same transaction. The true test of the sufficiency of an indictment is whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet. Cochran and Sayre v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704. And when the statute enumerates several acts in the alternative, where all are punishable by the same penalty, they may all be charged conjunctively as one offense in one count, and such charges are not repugnant, either in themselves, or in the punishment therefor. State v. Flint, 62 Mo. 393; Wharton's Criminal Pleading & Practice, 252, 251, and cases cited. But where two inconsistent offenses, requiring different punishment, are introduced into one count, judgment may be arrested; and, where there is repugnancy between the material averments of an indictment in a single count, it will vitiate said count. 18 Encyclopedia of Pleading & Practice, p. 742; 10 Id. p. 536; Wharton's Criminal Pleading & Practice, § 255. It is essential that the charge should not be repugnant or inconsistent with itself, for the law will not permit of absurdity and contradiction in legal proceedings. 1 Chitty, Criminal Law, p. 231. Repugnancy consists in two inconsistent allegations which destroy the effect of each other. 10 Encyclopedia of Law, 565. While it is permissible thus to charge different offenses in different counts, it is not admissible to charge them in a single count. Illustrations of such repugnancy are where an indictment charges the defendant with having forged a certain writing whereby one person was bound to another, in which it is said the whole will be vicious, for it is impossible that any one can be bound by forgery. 1 Chitty, Criminal Law, 231. So, also, an indictment which charged that the defendant disseised J. S. of lands, wherein it appears from the indictment itself that he had no freehold whereof he could be disseised, was held to be repugnant. 18 Encyclopedia of Pleading & Practice, 742; 1 Bishop's New Criminal Procedure, § 490. Where an indictment charged an offense to have been committed in 1801, and also in 1830, it was held to be repugnant. But where a statute makes several distinct and substantive offenses indictable, each one of which may be considered as representing a phase of the same offense, it has been frequently held that they can be coupled in one count. Wharton's Criminal Pleading & Practice, 251.

There is considerable authority to the effect, also, that where the contradictory or repugnant matters do not enter into the substance of the offense, and the indictment will be good without them, they may be rejected as surplusage; or where the repugnant matter is simply inconsistent with the preceding averments, it may also be rejected as surplusage (State v. Flint, supra); and that where the objectionable words are not contradicted by anything which goes before, but are merely irreconcilable with some subsequent allegation, they cannot be thus rendered neutral. 1 Chitty, Criminal Law, § 231. In Rex v. Stevens, 5 East, 260, Lord Ellenborough says, concerning repugnancy, as follows:

"If the sense be clear, nice exceptions ought not to be regarded, in respect of which Lord Hale (2 Hale's P. C. 193) says. that 'more offenders escape

by the overeasy ear given to exceptions in indictments than by their own innocence, and many heinous and crying offenses escape by these unseemly niceties, to the reproach of the law, to the shame of the government, and to the encouragement of villainy and the dishonor of God.' "

We think, within the rule as stated above, that these allegations are not necessarily repugnant. The evidence already considered sufficiently shows a conspiracy to perpetrate a fraud, to be consummated by the delivery of spurious notes, or some other article, or both. It was impossible to determine in advance by which of these modes the accused proposed to consummate this fraud. There would have been nothing necessarily inconsistent with his previous conduct if he had delivered packages containing both spurious notes and pieces of blank paper. In such case the evidence would have sustained the charges of said counts in one transaction.

Section 1025 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 720] provides as follows:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." United States v. Chase (C. C.) 27 Fed. 808.

But even if this allegation in the indictment was originally open to objection, we think it was a mere matter of form, which was cured by the general verdict. Repugnancy in an indictment is a ground for demurrer or motion in arrest of judgment. 18 Encyclopedia of Pleading & Practice, 743.

The citation by counsel for accused of Wharton's Criminal Pleading & Practice, § 256, does not support his statement that this defect cannot be cured by a general verdict. Said section is as follows:

"When one material averment in an indictment is contradictory to another, the whole is bad. Thus, to adopt one of the old illustrations, if an indictment charge the defendant with having forged a certain writing, whereby one person was bound to another, the whole will be vicious, for it is impossible any one can be bound by a forgery. A relative pronoun, also, referring with equal uncertainty to two antecedents, will make the proceedings bad, in arrest of judgment. But as is elsewhere seen, every fact or circumstance laid in an indictment may be rejected as surplusage."

And the author, at section 161, referring to the fault of improperly pleading alternative statements in an indictment, says, "and ordinarily the objection, if good, cannot be taken after verdict," and again, in section 760, states that "errors as to form, not going to the description of the offense, which might have been taken advantage of at a previous stage, are not sufficient cause to arrest judgment." As to duplicity, which bears a close analogy to repugnancy, he says:

"It may be objected to by special demurrer, perhaps by general demurrer, or the court may quash the indictment, but the better view is that it cannot be made a subject of a motion in arrest of judgment or of a writ of error." Section 255.

Repugnancy in a criminal proceeding may be ground for quashing. 1 Bishop's Criminal Law, § 773. In United States v. Bayaud (C. C.).

16 Fed. 376, 386, in this circuit, the court, comprising Judges Wallace, Benedict, and Brown, held as follows:

"It is sought to have judgment arrested because the indictment charges in each count at least two separate and distinct offenses. Whether such be the fact, it is unnecessary here to decide, for, assuming the defect to exist, it cannot be availed of on a motion in arrest of judgment."

It appears from the record in the case at bar that the only action taken on behalf of the accused was as follows:

"I move at this stage of the case that there be a dismissal as far as this defendant is concerned. There has no connection been shown here in regard to conspiracy—and also on the ground that the government has failed to make out a case under the indictment."

It further appears that the court gave counsel for the accused exceptions, as though he had asked for a direction of acquittal, and it appears from the bill of exceptions signed by the judge that there was a denial of the motion for a new trial. We are unable to find a single case where the accused has been allowed thus to take advantage of a formal objection after verdict. In State v. Flint, supra, cited and specially relied upon by counsel for the accused, the question of repugnancy was raised by a motion to quash. In Commonwealth v. Lawless, 101 Mass. 32, cited in Wharton, at section 256, the question arose on a motion to quash the indictment. In Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667, the objection to the sufficiency of the indictment was raised by demurrer. In United States v. Fay (D. C.) 83 Fed. 839, the question was raised by a motion to quash. In United States v. Harris (D. C.) 68 Fed. 347, it does not appear how the question was raised, but the court directed a verdict of not guilty for defects in the indictment. In United States v. Long (D. C.) 68 Fed. 348, the defendant demurred to the indictment. In United States v. Smith (D. C.) 45 Fed. 561, the question was raised by demurrer to the indictment. In Commonwealth v. Livermore, 4 Gray, 18, a new trial was granted on exceptions to the charge of the court. It thus appears that in every case cited by counsel for accused the objection of insufficiency of the indictment was raised by demurrer, or a motion to quash, or by exceptions to the charge. We have examined a number of other cases cited in the text-books on this point, and have been unable to find any well-considered case in which it has been held that such objection is not cured by a general verdict. The indictment charges, and the evidence sufficiently shows, all that is necessary to constitute a fraudulent attempt to commit an offense against the United States by the counterfeit money, etc., scheme.

We think the indictment was sufficient to apprise the defendant of the nature of the charge against him, and that, if there were defective or surplus statements, they have been cured by the general verdict of guilty. In any event, the counsel for the accused is not entitled to raise this question upon a motion to dismiss or acquit, or for a new trial. Where it appears to the court after verdict that, unless a defective averment were true, a verdict could not be sustained, in such case the verdict cures the defective averment, which might have been bad on demurrer. Clark's Criminal Procedure, § 117; People v. Mo-

ran, 43 App. Div. 155, 59 N. Y. Supp. 312. "Every element of the offense being set forth in the earlier part of the count, there was no necessity for repeating it when the particular credit misapplied is described, nor of negativing every possible theory consistent with an innocent delivery of the note to the defendant. This requirement would have the effect of limiting the government to allegations it might be wholly unable to prove, and without subserving any useful purpose to the defendant. While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty as well as to shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove. The note might have been delivered to the defendant for a score of honest purposes, which it would be utterly impossible to anticipate." Evans v. United States, 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830.

We have not found it necessary to discuss the more liberal rules of pleading applicable to charges for conspiracy. We think the jury were entirely justified in finding, upon the evidence, that such a conspiracy existed in fact, that the defendant was one of the conspirators, and that the acts charged were committed in furtherance of said conspiracy.

The judgment is sustained.