**UNITED STATES v. ALLUAN et al.**

**SAME v. DORSEY et al.**

**SAME v. VONARX et al.**

Nos. 8511, 8510, 8509.

District Court, N. D. Texas, Dallas Division.
Jan. 29, 1936.

W. B. Harrell, Will R. Harris, Hamilton, Hamilton & Turner, and Maurey Hughes, all of Dallas, Tex., L. H. Harrell, of Ada, Okl., and C. S. Slatton, of San Antonio, Tex., for the motion.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Clyde G. Hood, Asst. U. S. Atty., of Dallas, Tex., opposed.

ATWELL, District Judge.

There are twelve counts in No. 8511. The first ten relate to an alleged scheme to defraud, in the execution of which the post office establishment was used. The eleventh count charges a conspiracy and has an exhibition of forty overt acts. The twelfth count pleads an alleged violation of what is known as the Securities Act, charges the use of instruments of transportation and communication in interstate commerce, and of the United States mails. It specifically refers to the scheme and artifice to defraud, as pleaded in the first count.

There are seventeen defendants in this indictment.

It is claimed that they would defraud the persons whose names are set out in the indictment, and other persons too numerous to mention, by false representa-

tions and promises, thus inducing them to invest money and properties in shares of stock of an alleged mining company. That the mining company would be organized and promoted under the name of the "El Oro Mining Company" with a capital stock of 2,500,000 shares of a par value of $1 each. That the alleged business of said concern was the mining and milling of gold and other precious metals. That among the fraudulent representations and promises to the prospective purchasers would be various and sundry pretenses as to the gold-bearing value of the properties held by said company, which would be a New Mexico corporation. That a mill was to be erected to handle the ore; the listing of the stocks on the New York Stock Exchange, and the prospects of large dividends at an early date. That such representations were false and were to be made and were made by means of personal correspondence, circular letters, and pamphlets, through the United States mail; and by radio, telegram, and oral representations by salesmen. That such stock so to be sold would, when full discovery was made, immediately rise in the market, and purchasers should buy before that happened.

The indictment then properly traverses the truth of such promises and representations in sixteen different paragraphs of negation, after which each count sets forth a letter alleged to have been mailed to the addressee therein shown, for the purpose of carrying out the alleged fraudulent purpose.

Case No. 8510 has seven defendants. The first nine counts charge the fraudulent use of the mails in the representation that certain stocks and securities to be offered by the defendants through the alleged investment service concern, to wit, the Arizona Investment Service, and the Standard Investment Service, Incorporated, later to be known as the Securities Service Corporation, to those who could be induced to purchase said stock by false and fraudulent representations as to their value, and as to the value of the properties represented thereby. That such scheme was to be carried on by means of personal conversation, telephone calls, telegrams, circular letters, and personal correspondence through the United States mails. Each of the nine counts then sets forth a letter alleged to have been sent through the mail.

The tenth count pleads an alleged conspiracy to commit an offense against the United States, to wit, to use the mails fraudulently, in the manner shown in the first count, and sets forth twenty-one alleged overt acts.

The eleventh count is based on the National Securities Act of 1933, and charges that the defendants were engaged in the sale of securities, "by the use of means and instruments of transportation and communication in interstate commerce, and by the use of the mails of the United States of America," as set forth in the first count, and that in such sales they employed the scheme and artifice to defraud, as shown in that count, pleading four different sorts of alleged fraud and deceit.

Case No. 8509 has twenty defendants, and ten counts. The first eight allege a fraudulent use of the mail by the organization and promotion of a so-called Mid-West Mortgage Corporation, which would engage in the buying and selling of tax titles from the profits of which large returns would be made to investors. The representations with reference to the value of the stock in the said corporation are traversed by seventeen different paragraphs of alleged false statements. In each of the eight mail fraud counts is included a letter alleged to have been mailed to a person to be defrauded.

The ninth count charges the defendants with having conspired together to commit an offense against the United States, to wit, to use the mails fraudulently, as set out in the first count, and pleads forty-seven overt acts in pursuance of the alleged conspiracy.

The tenth count sets out the carrying on of a business by the defendants, such as comes under the Securities Act, namely, the sale of shares in the Mid-West Mortgage Corporation, by the use of means and instruments of transportation and communication in interstate commerce, and by the use of the United States mails, and that they employed the scheme and artifice to defraud, set out in the first count. Then follow four specific paragraphs in which alleged misrepresentations and false pretenses and promises are specifically treated.

8510 has several defendants who are also charged in 8511. The amount of money alleged to have been secured in these cases is several hundred thousand

dollars. Some of the defendants in 8509 have already entered pleas of guilty and have been sentenced.

All of the other defendants in 8509 join with all of the defendants in 8510 and 8511, in making substantially the same attack upon the indictment, and I, therefore, treat them together in this opinion, in order to save repetition.

Section 338 of title 18 U.S.C.A. provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, * * * in any post office, or station thereof * * * to be sent or delivered by the post office establishment of the United States * * * shall be" punished as shown.

The Securities Act of 1933, § 17, section 77q, title 15 U.S.C.A., provides: "It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Section 37, Cr.Code, 18 U.S.C.A. § 88, which was old section 5440 of the Revised Statutes, provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be" punished as therein provided.

The first objection is that each indictment is duplicitous in that different sorts of offenses are included, having different punishments and different ingredients.

Practically all of the rules with reference to criminal pleading are designed for the purpose of informing the defendant of the exact nature of the charge made against him in order that he may have a full opportunity to defend, and to direct the attention of the trier to specific acts, as well as to protect the defendant from subsequent prosecution after either conviction or acquittal. There was a time when the nicety of pleading demanded an avoidance of so-called multiplicity or duplicity. I would not like to say that that time has wholly disappeared, but I do say that felonies and misdemeanors may now be joined, Phillips v. United States (C.C.A.) 264 F. 657; allegations of different intents may be made, Boone v. United States (C.C.A.) 257 F. 963; United States v. Corbett, 215 U.S. 233, 30 S.Ct. 81, 54 L.Ed. 173; Simpson v. United States (C.C.A.) 229 F. 940; theft of different sorts of property, McNeil v. United States (C.C.A.) 246 F. 827, and as exhibited in many other decisions, too numerous to quote. Atwell's Federal Criminal Law (4th Ed.) 129, 363, 739. Frequently the courts have determined that a conspiracy may be charged in the same indictment with the main case, Reynolds v. United States (C.C.A.) 67 F.(2d) 216, and the doctrine seems to go so far that the old cases, which denied the right to convict on a conspiracy charge when the conspiracy had already ripened or merged into the actual fact, seem to have been superseded by a more modern and sensible rule.

Furthermore, each of the indictments under scrutiny lays the various counts upon the identical transactions, so that there is no confusion to the defendants by reason of the charges. A sovereignty may plead in as many forms as the law justifies, in order to be sure to anticipate the defenses of the accused, provided such pleading is an exhibition of the same facts, that is, the same act.

It follows, therefore, that the joinder in the same bill of a charge of fraudulent use of the mail for exploiting the stock of a useless mine, and of conspiring to defraud by offering the sale of stock which is useless, and of an alleged transgression against the Securities Act, which relates to actual sales of securities, or stocks, based upon such alleged valueless mine, is permitted.

292

■ The suggestion that the Securities Act is only directed at interstate commerce is answered by simply a passing reading of the statute which says, "Or by the use of the mails." Hence it is not necessary to negative the exception in the statute which fixes transportation and communication in interstate commerce as one method, by stating that sales took place outside of Texas.

The most serious contention made by the defendants is that the Securities Act repealed that portion of the fraudulent use of the mail statute, which might be used by the government in the prosecution of those who perpetrated a fraud, by the use of the mails, and obtained money or property by any untrue statement in the sale of securities.

The fact that the Securities Act was passed in 1933 and is, therefore, the latest expression of the Congress with reference to a scheme or artifice to defraud, by the use of the mails in the sale of securities, is claimed to deny the right to prosecute under a fraudulent use of the mail statute, for a fraud which the indictment shows to have been the contemplation of a sale of worthless securities by a scheme or artifice such as is defined in section 338 of title 18. Callahan v. United States, 285 U.S. 515, 52 S.Ct. 454, 76 L.Ed. 914; Gilkeson v. Missouri Pacific Railway Co., 222 Mo. 173, 121 S.W. 138, 24 L.R.A.(N.S.) 844, 17 Ann.Cas. 763; United States v. Tynen, 11 Wall. (78 U.S.) 88, 95, 20 L.Ed. 153; Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537; United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043, are cited as authority for this position.

■ The doctrine, in short, is that a law which embraces an *entire subject,* and which deals with all of its phases, withdraws such a subject from the operation of a general law as effectively as though the general law had been repealed. That is actually the law.

If the Securities Act embraces the body and soul of the fraudulent use of the mail statute, as to fraud in dealing with securities, then that doctrine must control in this case.

It must be conceded that a portion of the securities statute does relate to such a fraud as might be punished under the older mail-fraud statute. The writers seem to agree that the fact that different penalties are enumerated in a senior statute should also be considered, in forming necessary conclusions that, impliedly, when such a condition exists, the provisions of both cannot stand, and that Congress thereby repealed the first.

■ As serious as the suggestion is, it does not seem to me that it is sufficiently clear from the wording of the Securities Act, when the whole scope is considered, that it operates in the same field as the mail statute against fraud. It may happen that one who is guilty of a mail fraud is also guilty of having violated the Securities Act. As we have already seen, that frequently occurs in the commission of a crime. One may commit an assault and battery and at the same time be guilty of an aggravated assault, and of carrying a concealed weapon, and of murder. The acts are catalogued, however, in various prohibitions. The offense charged in these particular indictments was the formation of a scheme or artifice to defraud which was to be effected, to some degree, by the use of the mails. That scheme was the alleged development of a worthless mine and the issuance of stocks thereon, and the agreeing together of men to carry forward such offense, and then finally the actual sale of such stocks by misstatements through the United States mails. The fraudulent use of the mail was a completed offense before any securities were floated, or any securities were sold. The violation of the Securities Act was not completed until the sale actually took place. The two statutes, therefore, operate upon different portions of the same act, or the same fraud; the first for the punishment of the fraud itself, and the second for the sale of the fruit of the fraud. The first is complete without a sale; the second requires it. And this is true even though "sale" includes some transactions not ordinarily understood as sales. Securities Act of 1933, § 2(3), 15 U.S.C.A. § 77b, subd. (3).

One would be bold, indeed, to discover in the Securities Act a complete occupation of the entire field of the fraudulent use of the mails act, in so far as the sale of worthless securities through the mail is concerned. One would never violate the Securities Act unless one actually made the sale. Such is not the case under the fraud statute.

There are other differences in the exact dimensions of the field occupied by the two statutes, which will appear to the close thinker on further analysis.

The motions may be overruled.