**UNITED STATES v. BOGY et al.**

**SAME v. SPAULDING et al.**

**SAME v. OGDEN et al.**

**Nos. 5040, 5030, 5025.**

District Court, W. D. Tennessee, W. D.
Sept. 15, 1936.

William McClanahan, U. S. Atty., and
R. G. Draper and C. P. J. Mooney, Asst. U.
S. Attys., all of Memphis, Tenn., for the
United States.

Charles M. Bryan and Blan R. Maxwell,
both of Memphis, Tenn., for Benjamin A.
Bogy.

William R. Harrison and T. Robert
Acklen, both of Memphis, Tenn., for J. O.
Spaulding.

Harry Spears and Eric Babendreer,
both of Memphis, Tenn., for Thomas J.
Coyne.

408

MARTIN, District Judge.

These three criminal cases have been argued and considered together on separate demurrers of three defendants, Bogy, Spaulding, and Coyne. The defendants Bogy and Coyne demur to only the sixth count of the indictments against them, respectively; but the defendant Spaulding demurs to all six counts against him.

■ Under the established law of the United States courts, the demurrer of Spaulding to the first five counts, involving exclusively the mail fraud statute (18 U.S.C.A. § 338), to the effect that the facts stated do not constitute an offense against the United States or the laws thereof, is so manifestly bad as to merit no discussion. It should suffice to state that the following decisions, among others, negative the correctness of the criticisms of the defendant Spaulding directed against said counts 1, 2, 3, 4, and 5 of the indictment: Chew v. U. S. (C.C.A.) 9 F.(2d) 348; Clark v. U. S. (C.C.A.) 293 F. 301; Preeman v. U. S. (C.C.A.) 244 F. 1; Sandals v. U. S. (C C.A.) 213 F. 569; Emanuel v. U. S. (C.C. A.) 196 F. 317; Byron v. U. S. (C.C.A.) 259 F. 371; U. S. v. Clark (D.C.) 125 F. 92; O'Hara v. U. S. (C.C.A.) 129 F. 551; Stokes v. U. S., 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667; Culp v. U. S. (C.C.A.) 82 F. 990; Lehman v. U. S. (C.C.A.) 127 F. 41; Horn v. U. S. (C.C.A.) 182 F. 721; Crane v. U. S. (C.C.A.) 259 F. 480; Whitehead v. U. S. (C.C.A.) 245 F. 385; Wheeler v. U. S. (C.C.A.) 77 F.(2d) 216; Cowl v. U. S. (C.C.A.) 35 F.(2d) 794; McNear v. U. S. (C.C.A.) 60 F.(2d) 861; Brady v. United States (C.C.A.) 24 F.(2d) 397; Havener v. U. S. (C.C.A.) 49 F.(2d) 196; Fournier v. U. S. (C.C.A.) 58 F.(2d) 3; Robinson v. U. S. (C.C.A.) 33 F.(2d) 238; Krotkiewicz v. U. S. (C.C.A.6) 19 F.(2d) 421; Wheeler v. U. S. (C.C.A.9, 1935) 77 F.(2d) 216.

In Hagner v. United States (1932) 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, the Supreme Court, speaking through Mr. Justice Sutherland, said: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606."

The sixth count of the indictments charges conspiracy to commit the "offenses charged against said defendants in the several counts of this indictment preceding this count, made offenses by section 215 of the Criminal Code (section 338, title 18 U.S.C.A.) and section 17 of the Securities Act of 1933 (section 77q, title 15 U.S.C.A.)" in the manner and by the means stated in detail.

The demurrers to this count are placed upon three grounds, and will be considered in the numerical order presented.

■ I. The first ground of demurrer charges broadly that the challenged conspiracy count of the indictment "does not state facts sufficient to constitute an offense against the United States or the laws thereof."

Section 37 of the United States Criminal Code (18 U.S.C.A. § 88), provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

In United States v. Rabinowich, 238 U. S. 78, 85, 86, 35 S.Ct. 682, 683, 59 L.Ed. 1211, the Supreme Court said:

"It is apparent from a reading of section 37, Crim.Code (section 5440, Rev. Stat.), and has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. Callan v. Wilson, 127 U.S. 540, 555, 8 S.Ct. 1301, 32 L.Ed. 223, 228; Clune v. United States, 159 U.S. 590, 595, 16 S.Ct. 125, 40 L.Ed. 269, 271; Williamson v. United States, 207 U.S. 425, 447, 28 S. Ct. 163, 52 L.Ed. 278, 280; United States v. Stevenson [No. 2] 215 U.S. 200, 203, 30 S.Ct. 37, 54 L.Ed. 157, 158. And see Burton v. United States, 202 U.S. 344, 377, 26 S.Ct. 688, 50 L.Ed. 1057, 1069, 6 Ann.Cas.

362; Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153. The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, 290. And it is punishable as conspiracy, though the intended crime be accomplished. Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450, 455, Ann.Cas. 1914C, 128.

"Nor do we forget that a mere conspiracy, without overt act done in pursuance of it, is not criminally punishable under § 37, Crim.Code. United States v. Hirsch, 100 U.S. [33] 34, 25 L.Ed. 539, 540; Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L. Ed. 90, 94; Hyde v. United States, 225 U. S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, 1123, Ann.Cas.1914A, 614. There must be an overt act; but this need not be of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy. United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 59 L.Ed. 504, [L.R.A.1915D, 281]; Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 536, 35 S.Ct. 291, 59 L.Ed. 705. Nor need it appear that all the conspirators joined in the overt act. Bannon v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L.Ed. 494, 496. A person may be guilty of conspiring, although incapable of committing the objective offense. Williamson v. United States, and United States v. Holte, supra. And a single conspiracy might have for its object the violation of two or more of the criminal laws, the substantive offenses having, perhaps, different periods of limitation. See Joplin Mercantile Co. v. United States, 236 U.S. 531, 547, 548, 35 S.Ct. 291, 59 L.Ed. 705, for an instance of a conspiracy with manifold objects."

In the light of this clear-cut statement of the law, further illuminated by the authorities cited below (selected from many to the same effect), a plainly discernible offense against the laws of the United States is charged in the sixth count of the indictments. Stokes v. United States, 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667; Baker v. United States (C.C.A.) 10 F.(2d) 60; Rudner v. United States (C.C.A.) 281 F. 516; Dahl v. United States (C.C.A.) 234 F. 618; Grace v. United States (C.C.A.) 4 F.(2d) 658; Hedderly v. United States (C.C.A.) 193 F. 561; Mendelson v. United States, 61

App.D.C. 127, 58 F.(2d) 532; Zucker v. United States (C.C.A.) 288 F. 12; Belvin v. United States (C.C.A.) 12 F.(2d) 548; Taylor v. United States (C.C.A.) 2 F.(2d) 444; Ching v. United States (C.C.A.) 118 F. 538; United States v. Cella, 37 App.D. C. 423; Lehman v. United States (C.C.A.) 127 F. 41; Robinson v. United States (C. C.A.) 172 F. 105; Morris v. United States (C.C.A.) 7 F.(2d) 785; McKelvey v. United States (C.C.A.) 241 F. 801; Riddle v. United States (C.C.A.) 279 F. 216; United States v. Olmstead (D.C.) 5 F.(2d) 712; United States v. Herzig (D.C.) 26 F.(2d) 487; Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392.

II. (A) Upon the predicate that the first five counts of the indictment charge no violation of the Securities Act of 1933 (15 U.S.C.A. § 77q), but charge only a violation of the mail fraud statute (18 U.S.C.A. § 338), followed by the contention that the offenses defined in the Securities Act must be based upon "sales," the demurrer thus challenges the sufficiency of the indictment: "The indictment does not allege that any sale was actually made by the use or means of instruments of transportation in interstate commerce, but merely alleges that in pursuance of the plan to defraud instrumentalities of interstate commerce were employed. Therefore, if the Securities Act of 1933 was a valid and constitutional enactment, a violation thereof has not been charged by the first five counts of the indictment, and therefore the reference to said counts as setting out said violation does not describe an offense against the Securities Act of 1933."

This argument is rejected by the terms of the act itself. The Securities Act of 1933 (15 U.S.C.A. § 77b (3), provides: "The term 'sale,' 'sell,' 'offer to sell,' or 'offer for sale' shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter."

This definition of the words "sale," "offer to sell," and "offer for sale" cannot be ignored, but must be read into the subsequent section of the act defining the criminal offenses constituting a violation of the act, to wit, section 77q of title 15 U.S.C.A.:

"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

So, the act in terms covers not only a "sale," but a "disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value"; and the argument of the demurrants upon this proposition falls.

(B) The second point noted in the second numbered ground of demurrer to the sixth count of the indictment is thus stated:

"If two separate and distinct offenses are charged in the first five counts of the indictment and in each of them, then said first five counts would be void for duplicity.

"If a violation of the Securities Act of 1933 is not properly charged, then the fifth, sixth, seventh, eighth, both ninths, tenth and eleventh overt acts having relation only to a violation of the Securities Exchange Act, or a conspiracy to violate it, and no relation to a conspiracy to use the mails to defraud, or in any way connected with a conspiracy to use the mails to defraud, are surplusage in the indictment and have no relation to any charge therein."

■ Answering the first paragraph of the language of the demurrer quoted, supra, all of the first five counts of the indictments contain specific, appropriate, and adequate averments charging violations by the respective defendants of the mail fraud statute, in that they "did devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent misrepresentations, pretenses and promises," from enumerated persons; and "did place and cause to be placed in the postoffice of the United States of America at (place of mailing given), a certain letter (date given) on a letter-head of the (name of institution operated by the alleged swindlers) to be sent and delivered to (name of addressee), one of the victims, by the postoffice establishment of the United States, said letter being substantially of the following tenor and effect, to-wit: (letter set out in full, with name of one of the defendants, purportedly signed thereto)."

The said first five counts of the indictment appear to have been drawn with meticulous care to conform, with utmost nicety, to the requirements of the decisions, with respect to proper and essential pleading in indictments charging violation of the mail fraud statute. Only one offense is charged in each count. This court finds no duplicity in pleading. See cases cited, supra, pertaining to mail fraud indictments.

■ But in a conspiracy count, there is no fatal duplicity even if a conspiracy to violate more than one criminal law of the United States is charged. Outlaw v. United States (C.C.A.) 81 F.(2d) 805; Mulloney v. United States (C.C.A.) 79 F.(2d) 566; Greenbaum v. United States (C.C.A.) 80 F.(2d) 113; United States v. Alluan (D.C.) 13 F.Supp. 289. See also: United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211, supra, citing Joplin Mercantile Co. v. United States, 236 U.S. 531, 547, 548, 35 S.Ct. 291, 59 L.Ed. 705.

■ The recent District Court decision, United States v. Alluan (Jan. 29, 1936) 13 F.Supp. 289, cited supra, deals directly with the Securities Act of 1933 and holds permissible the joinder in the same indictment of charges of (1) using the mails to defraud in the sale of stock, (2) conspiring to defraud by offering stock for sale, and (3) violating the Securities Act of 1933 by the sale of stock.

Judge Atwell, after quoting the mail fraud statute, the Securities Act of 1933 (15 U.S.C.A. § 77 q), and the conspiracy statute, says (13 F.Supp. 289, op. 291):

"The first objection is that each indictment is duplicitous in that different sorts of offenses are included, having different punishments and different ingredients.

"Practically all of the rules with reference to criminal pleading are designed for the purpose of informing the defendant of the exact nature of the charge made against him in order that he may have a full opportunity to defend, and to direct the attention of the trier to specific acts, as well as to protect the defendant, from subse-

quent prosecution after either conviction or acquittal. There was a time when the nicety of pleading demanded an avoidance of so-called multiplicity or duplicity." The Judge reviews authorities to show that no such nicety is now preserved and continues:

"Each of the indictments under scrutiny lays the various counts upon the identical transactions, so that there is no confusion to the defendants by reason of the charges. [The same statement can be made with respect to the indictments in the cases at bar.] A sovereignty may plead in as many forms as the law justifies, in order to be sure to anticipate the defenses of the accused, provided such pleading is an exhibition of the same facts, that is, the same act."

The second paragraph of the last-quoted language of the demurrer presents no logical substance.

■ As an essential element of the crime of conspiracy, there must be an overt act; but this need not be of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy. United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 59 L.Ed. 504, L.R.A.1915D, 281; Joplin Mercantile Co. v. United States, supra; United States v. Rabinowich, supra.

Accordingly, the second numbered ground of the demurrers to the sixth count of the indictments must be overruled.

■ III. The third ground of the demurrers to the sixth (the conspiracy) count of the indictments challenges the constitutionality of the Securities Act of 1933 (15 U.S. C.A. § 77 q) in these words of the pleader:

"The Act upon its face shows that it is an attempt to regulate and control the sale of securities, and the various provisions thereof are taken up with efforts to prevent fraud in the sale of securities. Congress does not possess any power which has been granted to it by the Constitution of the United States to legislate in regard to the sale of securities, and not possessing such power, cannot under the guise of regulating interstate commerce assume authority and control over the sale of securities.

"(a) Securities are not articles of interstate commerce.

"(b) The sale of securities, even when means of transportation are incidentally used in connection therewith, is not commerce of the character which Congress has authority to regulate.

"(c) The Congress of the United States has no authority or power conferred by article 1, section 8, clause 3, to regulate any interstate communication unless same constitutes commerce or interferes with the current of commerce, or affects the current thereof, and the sale of securities is not interstate commerce, does not affect the stream of commerce, or interfere therewith, and the regulation of the sale of securities therefore cannot be had under an attempt to regulate interstate commerce as such.

"(2) The Congress of the United States does not possess the power under article 1, section 8, clause 7, authorizing it to establish Post Offices and Post Roads, to pass the legislation under which this indictment is drawn.

"The incidental use of the mails in a transaction of the sale of securities does not bring within the power of Congress authority and control of the sale of such securities, and the said Securities Act does attempt to regulate and control the sale of securities, provide a scheme and plan for such sale, and offense for failure to conform to said plan or scheme.

"The said Securities Act of 1933 as amended [15 U.S.C.A. § 77 a et seq.] is further unconstitutional and void as being violative of and repugnant to the provisions of the Fourth, Fifth, Ninth, Tenth, Eleventh and Fourteenth Amendments to the Constitution of the United States, and especially in violation of the Tenth Amendment to said Constitution, as a usurpation of powers reserved to the respective states."

No reported case has been presented or found in which has been determined directly the constitutionality of the Securities Act of 1933, with respect to its provisions pertaining to *criminal violation,* as defined in 15 U.S.C.A. § 77 q and punishment fixed in 15 U.S.C.A. § 77 x.

But the constitutionality of the act has been upheld by the Court of Appeals for the Second Circuit in a *civil* case, in which the cogent reasoning of the court rationally rejects the specious grounds of challenge before this court for decision. Jones v. Securities and Exchange Commission (C.C. A.2, Nov. 4, 1935) 79 F.(2d) 617.

True, the Jones Case, supra, a proceeding to review a ruling of the Securities and Exchange Commission, was reversed in the

412

Supreme Court; but upon a ground wholly foreign to the constitutional question involved. No intimation of error by the Court of Appeals upon the issue of the constitutionality of the act came from the Supreme Court.

This District Judge concurs in the convincing logic of Judge Manton's opinion now quoted (79 F.(2d) 617, 619, 620): "The appellant contends that the Securities Act of 1933 as amended is unconstitutional because the securities are not subjects of commerce. But the power of Congress as it relates to control over the use of the mails is fully sustained by the cases which have considered the mail fraud statutes. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706; Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092; In re Rapier, 143 U. S. 110, 12 S.Ct. 374, 36 L.Ed. 93; Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877. It is not an unreasonable method of preventing the use of the mails to promote and consummate the sales of misrepresented securities, to require that all securities, before mails are used, must be registered. Lewis Publishing Co. v. Morgan, 229 U.S. 288, 33 S.Ct. 867, 57 L.Ed. 1190, upheld the exaction of certain information as a condition precedent to a newspaper's classification as second-class matter. Congress clearly had the power to enact the provision excluding securities from the use of the mails unless a true statement describing them was filed in a public office in Washington. The postal power, like all other powers of Congress, is subject to the limitations imposed by the Bill of Rights. United States ex rel. Milwaukee S. D. Pub. Co. v. Burleson, 255 U. S. 407, 430, 41 S.Ct. 352, 65 L.Ed. 704; Burton v. United States, 202 U.S. 344, 371, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362. But admitting such limitation, we think there was sufficient authority for the mail sections of the Securities Act. The claim that the registration requirements violated due process of law is without force. Registration of all securities, whether good or bad, required by state blue sky laws have been upheld as no violation of the due process clause. Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480, L. R.A.1917F, 514, Ann.Cas.1917C, 643; Caldwell v. Sioux Falls Stock Yards Co., 242 U.S. 559, 37 S.Ct. 224, 61 L.Ed. 493; Merrick v. N. W. Halsey & Co., 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498. Similar registration required of securities within the jurisdiction by the federal government would likewise be clear of the inhibitions of due process in the Fifth Amendment. If the act is constitutional so far as it forbids the use of the mails, that is sufficient for our present consideration. Section 26 of the act (15 U.S.C.A. § 77 z) contains a provision that the invalidity of one part shall not invalidate the rest."

The Court of Appeals for the Second Circuit also soundly dismisses the objection urged of an unconstitutional delegation of power by Congress in the Securities Act of 1933, by distinguishing the cases of A. L. A. Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S. Ct. 241, 79 L.Ed. 446.

That the Circuit Court of Appeals, in the Jones Case, was not unaware of the penal provisions of the act, when passing upon its constitutionality, is evidenced by this assertion (79 F.(2d) pp. 617, 621): "It is a violation of the act for a registrant to include, in a registration statement filed with the commission, an untrue statement of a material fact or an omission of a material fact which should be stated. If such conduct is willful it is a criminal offense under section 24 of the act (15 U.S. C.A. § 77 x)."

Even without the authority of Jones v. Securities and Exchange Commission, supra, for guidance, the principles upon which the Supreme Court of the United States upheld the constitutionality of the mail fraud statute clearly establish the constitutionality of section 77q of the Securities Act of 1933. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706.

Said Mr. Justice Holmes, in delivering the unanimous opinion (240 U.S. 391, 393, 36 S.Ct. 367, 368, 60 L.Ed. 706):

"The grounds for coming to this court are, first, that § 215 of the Criminal Code is beyond the power of Congress, as applied to what may be a mere incident of a fraudulent scheme that itself is outside the jurisdiction of Congress to deal with; and second, that if it makes the deposit of each letter a separate offense, subject to such punishment as it received in this case, it imposes cruel and unusual punishment and excessive fines.

"These contentions need no extended answer. The overt act of putting a letter into the postoffice of the United States is a

matter that Congress may regulate. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877. Whatever the limits to the power, it may forbid any such acts done in furtherance of a scheme that it regards as contrary to public policy, whether it can forbid the scheme or not. In re Rapier, 143 U.S. 110, 134, 12 S.Ct. 374, 36 L.Ed. 93, 102; Public Clearing House v. Coyne, 194 U.S. 497, 507, 24 S.Ct. 789, 48 L.Ed. 1092; United States v. Stever, 222 U.S. 167, 173, 32 S.Ct. 51, 56 L.Ed. 145, 147. See Lottery Case (Champion v. Ames), 188 U.S. 321, 357, 23 S.Ct. 321, 47 L.Ed. 492, 501; United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 59 L.Ed. 504, 505, L.R.A.1915D, 281. Intent may make an otherwise innocent act criminal, if it is a step in a plot. Aikens v. Wisconsin, 195 U.S. 194, 206, 25 S.Ct. 3, 49 L.Ed. 154, 160; Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518, 524. The acts alleged have been found to have been done for the purpose of executing the scheme, and there would be no ground for contending, if it were argued, that they were too remotely connected with the scheme for the law to deal with them. The whole matter is disposed of by United States v. Young, 232 U.S. 155, 161, 34 S.Ct. 303, 58 L.Ed. 548, 551. As to the other point, there is no doubt that the law may make each putting of a letter into the postoffice a separate offense. Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151; In re Henry, 123 U.S. 372, 374, 8 S.Ct. 142, 31 L.Ed. 174, 175. And there is no ground for declaring the punishment unconstitutional. Howard v. Fleming, 191 U.S. 126, 135, 24 S.Ct. 49, 48 L.Ed. 121, 124. Ebeling v. Morgan, supra."

A recent opinion, dealing, in an equity suit, with the Securities Act 1933 (15 U.S.C.A. § 77a et seq.), and the Securities Exchange Act of 1934 (48 Stat. 881, 15 U.S.C.A. § 78a et seq.), is elucidating. Securities & Exchange Commission v. Torr (D. C.S.D.New York, April 10, 1936) 15 F. Supp. 315.

District Judge Patterson says (15 F. Supp. 315, 318, 319): "The practices that are forbidden are those that Congress might reasonably find to be likely to lead to the deception of the public. With the mails under national control, Congress has the clear power to forbid the use of the mails for deceptive transactions. As for the mails, this section of the 1934 act is no broader in scope than the 1933 act held valid in Jones v. Securities and Exchange Commission, supra. The act making it an offense to use the mails in a scheme to defraud and the act excluding lotteries from the mails are familiar instances of the exercise of the power of the federal government over the postal system, not to mention many others [citing Supreme Court decisions, already cited herein]. The power of Congress over commerce among the states is likewise a power of broad extent. The power has been exercised, validly exercised, to close the channels of interstate commerce to lottery tickets, impure food, transportation of women for immoral purposes, stolen automobiles. [Citing cases.] It cannot be doubted that Congress may close the channels of interstate commerce likewise to such transactions in corporate securities as it has reasonably found and declared to be directly detrimental to the financial health of the public generally."

It is settled law that the courts must leave to Congress the final determination of the policy of our national laws, the courts being concerned merely with their constitutionality and with the interpretation and application of them.

But in what manner could Congress have manifested greater concern for the general welfare in the protection of property than in providing criminal punishment for those offenders who would use the mails and instrumentalities of interstate commerce to sell securities to the unwary, by "device, scheme, or artifice to defraud," or who would obtain money or property by untrue or misleading statements, or by transactions, practices, or business methods, operating as fraud or deceit upon purchasers of securities?

The Securities Act of 1933, in its penal provisions, is plainly constitutional.

For the reasons stated in this opinion, all the demurrers and all grounds of each are overruled.